# UNITED STATES *v.* GAINEY.

No. 13. Argued October 15, 1964.—Decided March 1, 1965.

*Louis F. Claiborne* argued the cause for the United States. With him on the brief were *Solicitor General Cox, Assistant Attorney General Miller, Beatrice Rosenberg* and *Jerome M. Feit.*

*Joseph H. Davis* argued the cause for respondent. With him on the brief was *J. Sewell Elliott.*

MR. JUSTICE STEWART delivered the opinion of the Court.

After a jury trial in the United States District Court for the Middle District of Georgia, respondent Jackie Gainey was convicted of violating 26 U. S. C. § 5601

(a)(1) (possession, custody or control of a set up, unregistered still and distilling apparatus) and 26 U. S. C. § 5601 (a)(4) (carrying on "the business of a distiller or rectifier without having given bond as required by law").[1] In the course of his instructions the trial judge informed the jury of two statutory provisions which authorize a jury to infer guilt of the substantive offenses from the fact of a defendant's unexplained presence at the site of an illegal still.[2]  The Court of Appeals for the Fifth Circuit

---

[1] The evidence for the prosecution showed that an old Dodge truck with darkened headlights drove up to the site of a secluded still, hidden in a swamp in Dooly County, Georgia.  The respondent, Jackie Gainey, left the truck, turned on a flashlight, and walked toward the still.  There he was confronted by state and federal revenue agents.  The respondent attempted to flee, but after a short chase, he and his waiting colleagues were apprehended.  Since the trial, one of Gainey's co-defendants, Roy Lee Barrett, has died; the other, Cleveland Johns, elected to serve and has completed his sentence.

[2] Section 5601 (b)(1) provides:

"(1) Unregistered stills.

"Whenever on trial for violation of subsection (a)(1) the defendant is shown to have been at the site or place where, and at the time when, a still or distilling apparatus was set up without having been registered, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury (or of the court when tried without jury)."

Section 5601 (b)(2) provides:

"(2) Failure or refusal of distiller or rectifier to give bond.

"Whenever on trial for violation of subsection (a)(4) the defendant is shown to have been at the site or place where, and at the time when, the business of a distiller or rectifier was so engaged in or carried on, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury (or of the court when tried without jury)."

These sections were introduced into the Code in 1958.  The statutory inferences are modeled after 18 U. S. C. § 545 (1958 ed.), originally § 4 of the Smuggling Act of 1866, 14 Stat. 178, 179.  Similar

reversed the convictions on the ground that these statutory inferences are unconstitutional,[3] because it thought the connection between unexplained presence at an illegal still and the substantive offenses of "possession" and "carrying on" is insufficiently rational to satisfy the due process requirements formulated by this Court in *Tot* v. *United States,* 319 U. S. 463. We granted certiorari, *sub nom. United States* v. *Barrett,* to review the exercise of the grave power of annulling an Act of Congress. 375 U. S. 962.

If either statutory inference is valid, the judgment of the Court of Appeals must be reversed, because concurrent sentences were imposed by the District Court. *Emspak* v. *United States,* 349 U. S. 190, 195; *Sinclair* v. *United States,* 279 U. S. 263, 299 (1929). We find the inference authorized by § 5601 (b)(2) constitutionally permissible, and therefore reverse the judgment without reaching the validity of § 5601 (b)(1).

The legislative record shows that Congress enacted these provisions because of "the practical impossibility of proving . . . actual participation in the illegal activities except by inference drawn from [the defendant's] presence when the illegal acts were committed . . . ."[4] The statutes were passed against a backdrop of varying formu-

---

wording appears in 21 U. S. C. § 174 (1958 ed.), the Narcotic Drugs Import and Export Act of 1909, 35 Stat. 614, the constitutionality of which was sustained in *Yee Hem* v. *United States,* 268 U. S. 178.

[3] A third count charged a violation of § 5602, which prohibits carrying on the business of a distiller with intent to defraud the United States. The Court of Appeals reversed the conviction on this count also, and the Government did not seek review of this reversal. A fourth count, charging that the defendants, in violation of 26 U. S. C. § 5180 (1958 ed.), worked in a distillery on which no sign was placed showing the name of the person engaged in the distilling, resulted in a directed verdict of acquittal.

[4] Hearings before a Subcommittee of the House Committee on Ways and Means on Excise Tax Technical and Administrative Problems, Part 3, p. 95, 84th Cong., 2d Sess.

lations among the Circuits of the standards which should shape a trial judge's instructions to a jury in telling it what weight to accord the fact of a defendant's unexplained presence at an illegal still site. Long before 1958, the year the statutes were enacted, trial judges had been instructing juries that a defendant's presence at a still could be considered by them in determining whether the defendant had participated in carrying on the illegal operation. *Barton* v. *United States,* 267 F. 174, 175–176 (C. A. 4th Cir.). Compare *Wilson* v. *United States,* 162 U. S. 613. The Fourth Circuit had endorsed such a charge. *Barton* v. *United States, supra.* In the Third and Fifth Circuits the precedents were less clear. See *Graceffo* v. *United States,* 46 F. 2d 852 (C. A. 3d Cir.); *Fowler* v. *United States,* 234 F. 2d 697, 699 (C. A. 5th Cir.).

The variations among the courts of appeals concerned the reasonableness of inferring guilt of the substantive offense from the fact of unexplained presence at the site of the criminal enterprise. It is that question which Congress has now resolved in favor of the established practice of trial judges to include the inference in their charges.[5] And it is the same question of reasonableness which the petitioner asks this Court to determine in passing on the constitutionality of § 5601 (b)(2).

As the Court of Appeals correctly stated in this case, the constitutionality of the legislation depends upon the rationality of the connection "between the facts proved and the ultimate fact presumed." *Tot* v. *United States,*

---

[5] *Bozza* v. *United States,* 330 U. S. 160, contributed to congressional concern. See Hearings, note 4, *supra.* But that case did not deal with the problem of presence alone as insufficient evidence where the substantive offense is "carrying on" the enterprise of illegal distillation. Bozza's conviction for "carrying on" the enterprise of illegal distillation was affirmed by this Court.

319 U. S. 463, 466. The process of making the determination of rationality is, by its nature, highly empirical, and in matters not within specialized judicial competence or completely commonplace, significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions from it. As the record in the Circuits shows, courts have differed in assessing the weight to be placed upon the fact of the defendant's unexplained presence at a still. See *United States v. Freeman,* 286 F. 2d 262 (C. A. 4th Cir.). Yet it is precisely when courts have been unable to agree as to the exact relevance of a frequently occurring fact in an atmosphere pregnant with illegality that Congress' resolution is appropriate.

The rationality of the inference provided by § 5601 (b)(2) must be viewed in the context of the broad substantive offense it supports. Section 5601 (a)(4) proscribes "carrying on" the enterprise of illegal distillation—an offense which is one of the most comprehensive of the criminal statutes designed to stop the production and sale of untaxed liquor. See *Vukich v. United States,* 28 F. 2d 666, 669 (C. A. 9th Cir.). Those who aid and abet the enterpriser come within the statute's reach by virtue of 18 U. S. C. § 2 (1958 ed.). *United States v. Giuliano,* 263 F. 2d 582 (C. A. 3d Cir.). Suppliers, haulers, and a host of other functionaries have been convicted under the statute. See *United States v. Pritchard,* 55 F. Supp. 201 (D. C. W. D. S. C.), aff'd, 145 F. 2d 240 (C. A. 4th Cir.). Congress was undoubtedly aware that manufacturers of illegal liquor are notorious for the deftness with which they locate arcane spots for plying their trade. Legislative recognition of the implications of seclusion only confirms what the folklore teaches—that strangers to the illegal business rarely penetrate the curtain of

secrecy.[6]   We therefore hold that § 5601 (b)(2) satisfies
the test of *Tot* v. *United States, supra.*

But it is said that this statute is unconstitutional upon
a different ground—that it impinges upon the trial judge's
powers over the judicial proceeding.   We cannot agree.
Our Constitution places in the hands of the trial judge
the responsibility for safeguarding the integrity of the
jury trial, including the right to have a case withheld
from the jury when the evidence is insufficient as a matter
of law to support a conviction.   The statute before us
deprives the trial judge of none of his normal judicial
powers.   We do not interpret the provision in the statute
that unexplained "presence . . . shall be deemed suffi-
cient evidence to authorize conviction" as in any way
invading the province of the judge's discretion.   The lan-
guage permits the judge to submit a case to the jury on the
basis of the accused's presence alone, and to this extent it
constitutes congressional recognition that the fact of pres-
ence does have probative worth in the determination of
guilt.   But where the only evidence is of presence the
statute does not require the judge to submit the case to
the jury, nor does it preclude the grant of a judgment not-
withstanding the verdict.   And the Court of Appeals may
still review the trial judge's denial of motions for a
directed verdict or for a judgment *n. o. v.*

The statute does not prevent the jury from being
"properly instructed on the standards for reasonable

---

[6] "Very few of the illicit distillers allow any one, except their most
intimate friends, to approach their distilleries.  Such places, as a
rule, are forbidden ground, for the reason that when the violators
are arrested it is a difficult matter to prove them guilty, when so few
persons have ever seen them operating their distilleries."   Atkinson,
After the Moonshiners, By One of the Raiders, at p. 23.

"The first requisite for an illicit still is a good stream of cool
water. . . .

"The next requisite is seclusion.  It must be placed where no one
ever travels, or even thinks of traveling."   *Id.,* at p. 18.

doubt." *Holland* v. *United States,* 348 U. S. 121, 139. In this case, the trial judge instructed the jury as follows:

"There is one other matter which I should mention. I charge you that the presence of defendants at a still, if proved, with or without flight therefrom, or attempted flight therefrom, if proved, would be a circumstance for you to consider along with all the other testimony in the case. Of course, the bare presence at a distillery and flight therefrom of an innocent man is not in and of itself enough to make him guilty. It is possible under the law for an innocent man to be present at a distillery, and it is possible for him to run when about to be apprehended, and such an innocent man ought never to be convicted, but presence at a distillery, if you think these men were present, is a circumstance to be considered along with all the other circumstances in the case in determining whether they were connected with the distillery or not. Did they have any equipment with them that was necessary at the distillery? What was the hour of day that they were there? Did the officers see them do anything? Did they make any statements?

"It is your duty to explore this case, analyze the evidence pro and con fairly. Presence at a still, together with other circumstances in the case, if they are sufficient in your opinion to exclude every reasonable conclusion except that they were there connected with the distillery, in an illegal manner, . . . carrying on the business as charged . . . , if you believe those things, would authorize you in finding the defendants guilty.

"And under a statute enacted by Congress a few years back, when a person is on trial for . . . carrying on the business of a distiller without giving bond as required by law, as charged in this case, and the

defendant is shown to have been at the site of the place . . . where and at the time when the business of a distiller was engaged in or carried on without bond having been given, under the law such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant by the evidence in the case and by proven facts and circumstances explains such presence to the satisfaction of the jury.

*"Now this does not mean that the presence of the defendant at the site and place at the time referred to requires the jury to convict the defendant, if the defendant by the evidence in the case, facts and circumstances proved, fails to explain his presence to the satisfaction of the jury. It simply means that a jury may, if it sees fit, convict upon such evidence, as it shall be deemed in law sufficient to authorize a conviction, but does not require such a result."* (Emphasis supplied.)

The jury was thus specifically told that the statutory inference was not conclusive. "Presence" was one circumstance to be considered among many. Even if it found that the defendant had been present at the still, and that his presence remained unexplained, the jury could nonetheless acquit him if it found that the Government had not proved his guilt beyond a reasonable doubt. *Holland* v. *United States, supra.* In the absence of the statute, such an instruction to the jury would surely have been permissible. Cf. *Wilson* v. *United States, supra.* Furthermore, in the context of the instructions as a whole, we do not consider that the single phrase "unless the defendant by the evidence in the case and by proven facts and circumstances explains such presence to the satisfaction of the jury" can be fairly understood as a comment on the petitioner's failure to

testify.[7]   Cf. *Bruno* v. *United States,* 308 U. S. 287.   The judge's overall reference was carefully directed to the evidence as a whole, with neither allusion nor innuendo based on the defendant's decision not to take the stand.

In *McNamara* v. *Henkel,* 226 U. S. 520, 525, the Court approved a proceeding which did no more than "accord to the evidence, if unexplained, its natural probative force."   That is all that Congress has done here. We cannot find that the law it enacted violates the Constitution.

*Reversed.*

MR. JUSTICE DOUGLAS, dissenting in part.

The statute which the Court finds constitutional provides:

> "Whenever on trial for violation of subsection (a)(4) [making it an offense to carry on the business of a distiller or rectifier without having given bond as required by law] the defendant is shown to have been at the site or place where, and at the time when, the business of a distiller or rectifier was so engaged in or carried on, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury (or of the court when tried without jury)."   26 U. S. C. § 5601 (b)(2).

It would be possible to interpret the statute as compelling judges to give the following instruction to juries: "If you find that the defendant was present at the still, then the law requires you to assume that he was there carrying on the business of a distiller within the meaning

---

[7] Indeed the better practice would be to instruct the jurors that they may draw the inference unless the evidence in the case provides a satisfactory explanation for the defendant's presence at the still, omitting any explicit reference to the statute itself in the charge.

of the statute; but you need not make this assumption
if the defendant has given another explanation of his
presence there and you are satisfied of the truth of that
explanation." If the statute were read as compelling
such an instruction, I would find it constitutionally intol-
erable, for the reasons so well stated by my Brother
BLACK.

The Court, however, interprets the statute as merely
allowing, not compelling, the jury to draw the inference
of "carrying on" from the fact of "presence." The jury
is left free to reject the inference if, in light of all the
circumstances of the case, a reasonable doubt remains as
to the defendant's guilt. That is the way the jury would
normally function, apart from the statute. So, I have
concluded that the statute, as construed, merely provides
a rule of evidence and no more.

There are, to be sure, dangers inherent in any statutory
presumption. Perhaps the jury will be overawed if it
is told that some particular factual inference has been
enshrined in an Act of Congress. Therefore the Court
quite rightly suggests that the better practice would be
to omit "any explicit reference to the statute itself in the
charge." *Ante*, p. 71, n. 7. Or perhaps the judge may
feel that the statute restricts his power to withhold an
insufficient case from the jury or to grant a judgment not-
withstanding the verdict. The Court reassures the trial
judge that the statute does not thus invade the province
of his discretion. Nor is the function of the appellate
courts in any way circumscribed.

In my view, the acute danger in the statute as con-
strued and applied lurks in its provision that the jury
may draw the inference in question "unless *the defendant
explains* such presence to the satisfaction of the jury . . . ."
(Emphasis supplied.) If this meant that the judge
should instruct that the inference may be drawn unless
the defendant himself becomes a witness and personally

explains his presence at the still, then, as my Brother BLACK says, the statute would clearly subject the defendant to an impermissible compulsion to testify. But more subtly compelling instructions than that are outlawed by the same policy. It has long been the rule in the federal courts that the defendant's failure to testify ought not to be even the subject of unfavorable comment:

> "It is not every one who can safely venture on the witness stand though entirely innocent of the charge against him. Excessive timidity, nervousness when facing others and attempting to explain transactions of a suspicious character, and offences charged against him, will often confuse and embarrass him to such a degree as to increase rather than remove prejudices against him. . . . [C]ounsel is forbidden by the statute [now 18 U. S. C. § 3481]* to make any comment which would create or tend to create a presumption against the defendant from his failure to testify." *Wilson* v. *United States,* 149 U. S. 60, 66–67.

Just as it is improper for counsel to argue from the defendant's silence, so is it improper for the trial judge to call attention to the fact of defendant's silence. Indeed, under 18 U. S. C. § 3481 the defendant is entitled as a matter of right to have the trial judge expressly tell the jury that it must not attach any importance to the defendant's failure to testify; or, if the defendant sees fit, he may choose to have no mention made of his silence by anyone. *Bruno* v. *United States,* 308 U. S. 287.

---

*"In trial of all persons charged with the commission of offenses against the United States and in all proceedings in courts martial and courts of inquiry in any State, District, Possession or Territory, the person charged shall, at his own request, be a competent witness. His failure to make such request shall not create any presumption against him."

I have previously expressed my view that this rule against comment on the defendant's silence is mandated by the Fifth Amendment, because "[u]sing a defendant's silence as evidence against him is one way of having him testify against himself." *Scott* v. *California,* 364 U. S. 471, 472 (dissenting opinion).

The charge in the present case does not, in my view, satisfy the requirements of the Fifth Amendment. The judge told the jury that the inference could be drawn "unless the defendant by the evidence in the case and by proven facts and circumstances explains such presence to the satisfaction of the jury." I believe the charge in that form runs counter to the federal policy that forbids conviction on compelled testimony, not only because, as my Brother BLACK points out, it puts direct pressure on the defendant to come forward and testify, but also because it amounts in practical effect to an improper comment on the defendant's silence where, as here, he resists the pressure and does not take the stand in his own behalf. Unlike the Court, therefore, I would not interpret the statute before us as attempting a *pro tanto* repeal of 18 U. S. C. § 3481 by authorizing such an instruction.

MR. JUSTICE BLACK, dissenting.

Respondent Gainey was tried and convicted of possession of an unregistered still [1] and of carrying on the

---

[1] 26 U. S. C. § 5601 (a)(1) (1958 ed.) provides:

"Offenses.

"Any person who—

"(1) Unregistered stills.

"Has in his possession or custody, or under his control, any still or distilling apparatus set up which is not registered, as required by section 5179 (a) . . .

.     .     .     .     .

"shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, for each such offense."

business of a distiller without having given bond [2] in violation of a federal statute. Other provisions of the statute,[3] entitled "Presumptions," declare that presence at the site of such a distillery "shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury . . . ." At the trial federal and state officers testified, among other things, that they had seen Gainey at a still site. Gainey did not testify. The trial court, quite appropriately if the foregoing provisions are valid, instructed the jury

---

[2] 26 U. S. C. § 5601 (a) (4) (1958 ed.) provides:

"Offenses.

"Any person who—

.        .        .        .        .

"(*4*) *Failure or refusal of distiller or rectifier to give bond.*

"Carries on the business of a distiller or rectifier. without having given bond as required by law . . .

.        .        .        .        .

"shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, for each such offense."

[3] Section 5601 (b) (1) provides:

"(*b*) *Presumptions.*

"(*1*) *Unregistered stills.*

"Whenever on trial for violation of subsection (a) (1) the defendant is shown to have been at the site or place where, and at the time when, a still or distilling apparatus was set up without having been registered, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury (or of the court when tried without jury)."

Section 5601 (b) (2) provides:

"(*2*) *Failure or refusal of distiller or rectifier to give bond.*

"Whenever on trial for violation of subsection (a) (4) the defendant is shown to have been at the site or place where, and at the time when, the business of a distiller or rectifier was so engaged in or carried on, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury (or of the court when tried without jury)."

that Gainey's unexplained presence at the still was "deemed in law sufficient" to convict. I think that the statutory provisions which authorize such a charge deprived Gainey (1) of his constitutional right to trial by jury, guaranteed him both in Art. III, § 2, and in the Sixth Amendment; (2) of due process of law guaranteed by the Fifth Amendment, which includes the right to be tried for a crime in a court according to the law of the land, without any interference with that court's judicial functions by the Congress; and (3) of his right guaranteed by the Fifth Amendment not to be compelled to be a witness against himself.

First of all, let me say that I am at a loss to understand the Court's puzzling statement that "where the only evidence is of presence the statute does not require the judge to submit the case to the jury, nor does it preclude the grant of a judgment notwithstanding the verdict." The provisions in question both say unqualifiedly that "presence of the defendant shall be deemed sufficient evidence to authorize conviction" unless the defendant explains his presence. The Court holds that this statutory command in § 5601 (b)(2) is valid,[4] but then for some reason adds that judges are free to ignore it or, after telling juries that they may rely on it, are free to set aside the verdicts of those juries which do. In other words, under the Court's holding the judge is left free to take the extraordinary course of following a valid statute or not, as he chooses. Judges are not usually given such unlimited discretion to disregard valid statutes. And as the Court indicates elsewhere in its opinion, it was to prevent judges from setting aside jury verdicts based on presence alone that Congress passed this statute in the first place. Besides being almost self-contradictory, it amounts to an emasculation of

[4] Although the Court does not consider the validity of § 5601 (b) (1), its reasoning surely would seem to apply to that section as well.

these statutory provisions, I think, to say that the judge was not required to tell the jury about them. But whether or not he was bound to do so, the fact is that here he did, and so this jury deliberated with the judge's solemn instruction that Congress had decided that proof of mere unexplained presence at a still was sufficient to convict Gainey of having illegally possessed it or carried on its business. Few jurors could have failed to believe that it was their duty to convict under this charge if presence was proved, and few judges could have failed to believe it was their duty to uphold such a conviction, even though all of them in a particular case might have felt that mere presence alone was not enough to show guilt.

It has always been recognized that the guaranty of trial by jury in criminal cases means that the jury is to be the factfinder. This is the only way in which a jury can perform its basic constitutional function of determining the guilt or innocence of a defendant. See, *e. g., United States ex rel. Toth* v. *Quarles,* 350 U. S. 11, 15–19; *Reid* v. *Covert,* 354 U. S. 1, 5–10 (opinion announcing judgment). And of course this constitutionally established power of a jury to determine guilt or innocence of a defendant charged with crime cannot be taken away by Congress, directly or indirectly, in whole or in part. Obviously, a necessary part of this power, vested by the Constitution in juries (or in judges when juries are waived), is the exclusive right to decide whether evidence presented at trial is sufficient to convict. I think it flaunts the constitutional power of courts and juries for Congress to tell them what "shall be deemed sufficient evidence to authorize conviction." And if Congress could not thus directly encroach upon the judge's or jury's exclusive right to declare what evidence is sufficient to prove the facts necessary for conviction, it should not be allowed to do so merely by labeling its encroachment a "presumption." Neither *Tot* v. *United States,* 319 U. S. 463, relied

on by the Court as supporting this presumption, nor any case cited in *Tot* approved such an encroachment on the power of judges or juries. In fact, so far as I can tell, the problem of whether Congress can so restrict the power of court and jury in a criminal case in a federal court has never been squarely presented to or considered by this Court, perhaps because challenges to presumptions have arisen in many crucially different contexts but nevertheless have generally failed to distinguish between presumptions used in different ways, treating them as if they are either all valid or all invalid, regardless of the rights on which their use may impinge. Because the Court also fails to differentiate among the different circumstances in which presumptions may be utilized and the different consequences which will follow, I feel it necessary to say a few words on that subject before considering specifically the validity of the use of these presumptions in the light of the circumstances and consequences of their use.

In its simplest form a presumption is an inference permitted or required by law of the existence of one fact, which is unknown or which cannot be proved, from another fact which has been proved. The fact presumed may be based on a very strong probability, a weak supposition or an arbitrary assumption. The burden on the party seeking to prove the fact may be slight, as in a civil suit, or very heavy—proof beyond a reasonable doubt— as in a criminal prosecution. This points up the fact that statutes creating presumptions cannot be treated as fungible, that is, as interchangeable for all uses and all purposes. The validity of each presumption must be determined in the light of the particular consequences that flow from its use. When matters of trifling moment are involved, presumptions may be more freely accepted, but when consequences of vital importance to litigants and to the administration of justice are at stake, a more careful scrutiny is necessary.

In judging the constitutionality of legislatively created presumptions this Court has evolved an initial criterion which applies alike to all kinds of presumptions: that before a presumption may be relied on, there must be a rational connection between the facts inferred and the facts which have been proved by competent evidence, that is, the facts proved must be evidence which is relevant, tending to prove (though not necessarily conclusively) the existence of the fact presumed. And courts have undoubtedly shown an inclination to be less strict about the logical strength of presumptive inferences they will permit in civil cases than about those which affect the trial of crimes. The stricter scrutiny in the latter situation follows from the fact that the burden of proof in a civil lawsuit is ordinarily merely a preponderance of the evidence, while in a criminal case where a man's life, liberty, or property is at stake, the prosecution must prove his guilt beyond a reasonable doubt. See *Morrison* v. *California,* 291 U. S. 82, 96–97. The case of *Bailey* v. *Alabama,* 219 U. S. 219, is a good illustration of this principle. There Bailey was accused of violating an Alabama statute which made it a crime to fail to perform personal services after obtaining money by contracting to perform them, with an intent to defraud the employer. The statute also provided that refusal or failure to perform the services, or to refund money paid for them, without just cause, constituted "prima facie evidence" (*i. e.,* gave rise to a presumption) of the intent to injure or defraud. This Court, after calling attention to prior cases dealing with the requirement of rationality, passed over the test of rationality and held the statute invalid on another ground. Looking beyond the rational-relationship doctrine the Court held that the use of this presumption by Alabama against a man accused of crime would amount to a violation of the Thirteenth Amendment to the Constitution, which forbids "involuntary

servitude, except as a punishment for crime." In so deciding the Court made it crystal clear that rationality is only the first hurdle which a legislatively created presumption must clear—that a presumption, even if rational, cannot be used to convict a man of crime if the effect of using the presumption is to deprive the accused of a constitutional right. In *Bailey* the constitutional right was given by the Thirteenth Amendment. In the case before us the accused, in my judgment, has been denied his right to the kind of trial by jury guaranteed by Art. III, § 2, and the Sixth Amendment, as well as to due process of law and freedom from self-incrimination guaranteed by the Fifth Amendment. And of course the principle announced in the *Bailey* case was not limited to rights guaranteed by the Thirteenth Amendment. The Court said in *Bailey*:

> "It is apparent that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment. The power to create presumptions is not a means of escape from constitutional restrictions." 219 U. S., at 239.

Thus the Court held that presumptions, while often valid (and some of which, I think, like the presumption of death based on long unexplained absence, may perhaps be even salutary in effect), must not be allowed to stand where they abridge or deny a specific constitutional guarantee. It is one thing to rely on a presumption to justify conditional administration of the estate of a person absent without explanation for seven years, see *Cunnius* v. *Reading School District,* 198 U. S. 458; compare *Scott* v. *McNeal,* 154 U. S. 34; it would be quite another to use the presumption of death from seven years' absence to convict a man of murder. I do not think it can be denied that use of the statutory presumptions in the case before

us at the very least seriously impaired Gainey's constitutional right to have a jury weigh the facts of his case without any congressional interference through predetermination of what evidence would be sufficient to prove the facts necessary to convict in a particular case.

The *Bailey* case also emphatically answers the Court's insistence that this encroachment on Gainey's constitutional rights was justified or neutralized by the trial court's instruction that while evidence of unexplained presence was sufficient under the statute to convict, the jury nonetheless was not compelled to convict. This same kind of contention was made to this Court and rejected in *Bailey,* where the Alabama Supreme Court had upheld that State's presumption on the ground that "with such evidence before them, the jury are still left free to find the accused guilty or not guilty, according as they may be satisfied of his guilt or not, by the whole evidence." *Bailey* v. *State,* 161 Ala. 75, 78, 49 So. 886, 887. This Court answered that contention then, as I think it should now, saying:

> "The point is that, in such a case, the statute *authorizes* the jury to convict. It is not enough to say that the jury may not accept that evidence as alone sufficient; for the jury may accept it, and they have the express warrant of the statute to accept [it] as a basis for their verdict." 219 U. S., at 235. (Emphasis in original.)

And the Court added that "The normal assumption is that the jury will follow the statute and, acting in accordance with the authority it confers, will accept as sufficient what the statute expressly so describes." *Id.,* at 237.

Even if I could accept the doctrine that Congress after declaring that certain conduct shall be a crime has further power to tell judges and juries that certain evidence shall be sufficient to prove that conduct and convict

a defendant, I could not agree that these statutory presumptions are constitutional. They declare mere presence at a still site without more to be sufficient evidence to convict of the crimes of carrying on a distillery business and possessing a still.[5] While presence at a still is unquestionably a relevant circumstance to add to others to prove possession or operation of a still, I could not possibly agree that mere presence is sufficient in and of itself, without any supporting evidence, to permit a finding that, beyond a reasonable doubt, the person present carried on a distillery business or possessed a still or even aided and abetted in committing those crimes. Indeed, with respect to the crime of possession, as the Court concedes, we held squarely to the contrary in *Bozza* v. *United States,* 330 U. S. 160, quite properly, I think. In setting aside the *Bozza* conviction for possession of a still, which had been based on mere presence at a still, this Court was acting in accordance with the historic principle that "independent trial judges and independent appellate judges have a most important place under our constitutional plan since they have power to set aside convictions." *United States ex rel. Toth* v. *Quarles,* 350 U. S. 11, 19. This judicial responsibility to pass on the sufficiency of the evidence must be exercised in each case, no more to be controlled by a general congressional enactment than it could be by a special act directed to one case only.[6] This protective function of the court is amply demonstrated in the case before us: while Gainey was originally indicted on four counts,

---

[5] I agree with the Court's holding that the language of § 5601 (b) (2) "permits the judge to submit a case to the jury on the basis of the accused's presence alone." The Court does not suggest any reason why it would interpret the identical language in § 5601 (b) (1) any differently.

[6] Such an act obviously would be proscribed as a bill of attainder, forbidden by Art. I, § 9. See *United States* v. *Lovett,* 328 U. S. 303; *Cummings* v. *Missouri,* 4 Wall. 277; *Ex parte Garland,* 4 Wall. 333.

the trial judge directed a verdict of acquittal on one [7] and the Court of Appeals ordered acquittal on another.[8]

It indeed is true, as the Court suggests, that it was to make convictions possible on no more evidence than presence that the presumption statute here under consideration was passed. Undoubtedly a presumption which can be used to produce convictions without the necessity of proving a crucial element of the crime charged—and a sometimes difficult-to-prove element at that [9]—is a boon to prosecutors and an incongruous snare for defendants in a country that claims to require proof of guilt beyond a reasonable doubt. Quite accurately such a use of a presumption has been described as "First Aid to the District Attorney." [10] Instead of supporting the constitutionality of such a use of statutory presumptions, however, I think this argument based on necessity and convenience points out its fatal defects. I suppose no one would deny that the Government's burden would also be made lighter if the defendant was not represented by counsel, compare *Gideon* v. *Wainwright*, 372 U. S. 335,

[7] The trial judge directed a verdict of acquittal on a count charging Gainey with working in a distillery which did not bear a sign showing the name of the person engaged in the distilling and denoting the business in which he was engaged, an offense made punishable by 26 U. S. C. §§ 5180 (a), 5681 (c) (1958 ed.).

[8] Count three of the indictment charged Gainey with carrying on the business of a distiller with intent to defraud the United States of taxes, a violation of 26 U. S. C. § 5602 (1958 ed.). The Court of Appeals, holding that the record showed "no evidence whatever of intent to defraud," set aside the jury's verdict of conviction on that count. 322 F. 2d 292, 300.

[9] In this case, however, the record shows that there unquestionably was enough other evidence to submit the case to the jury without need for any artificial presumption. But the Court does not suggest that the use here of this presumption either should be or could be called harmless error.

[10] Chamberlain, Presumptions as First Aid to the District Attorney, 14 A. B. A. J. 287.

or if the jury could receive and consider confessions extorted by torture, compare *Brown* v. *Mississippi,* 297 U. S. 278, or if evidence obtained from defendants through illegal searches and seizures could be used against them, compare *Mapp* v. *Ohio,* 367 U. S. 643, but this Court has not hesitated to strike down such encroachments on those constitutional rights. Yet here the Court sanctions a method less crude, but just as effective, to deny Gainey his constitutional right to a trial by jury.[11]

I cannot subscribe to the idea that any one of the constitutional grants of power to Congress enumerated in Art. I, § 8, including the Necessary and Proper Clause, contains either an express or an implied power of Congress to instruct juries as to what evidence is sufficient to convict defendants in particular cases.[12] Congress can

---

[11] "Once the thumbscrew and the following confession made conviction easy; but that method was crude and, I suppose, now would be declared unlawful upon some ground. Hereafter, presumption is to lighten the burden of the prosecutor. The victim will be spared the trouble of confessing and will go to his cell without mutilation or disquieting outcry." *Casey* v. *United States,* 276 U. S. 413, 420 (dissenting opinion).

[12] It might be argued, although the Court does not so argue or hold, that Congress if it wished could make presence at a still a crime in itself, and so Congress should be free to create crimes which are called "possession" and "carrying on an illegal distillery business" but which are defined in such a way that unexplained presence is sufficient and indisputable evidence in all cases to support conviction for those offenses. See *Ferry* v. *Ramsey,* 277 U. S. 88. Assuming for the sake of argument that Congress could make unexplained presence a criminal act, and ignoring also the refusal of this Court in other cases to uphold a statutory presumption on such a theory, see *Heiner* v. *Donnan,* 285 U. S. 312, there is no indication here that Congress intended to adopt such a misleading method of draftsmanship, nor in my judgment could the statutory provisions if so construed escape condemnation for vagueness, under the principles applied in *Lanzetta* v. *New Jersey,* 306 U. S. 451, and many other cases.

undoubtedly create crimes, but it cannot constitutionally try them. The Constitution specifically prohibits bills of attainder. Congress can declare certain conduct a crime, unless barred by some constitutional provision, but it must, if true to our Constitution of divided powers and the Fifth Amendment's command that cases be tried according to due process of law, leave the trial of those crimes to the courts, in which judges or juries can decide the facts on their own judgment without legislative constraint and judges can set aside convictions which they believe are not justified by the evidence. See *Tot* v. *United States,* 319 U. S. 463, 473 (concurring opinion). "[I]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime." *McFarland* v. *American Sugar Refining Co.,* 241 U. S. 79, 86. See *Manley* v. *Georgia,* 279 U. S. 1. Yet, viewed realistically, that is what the presumption which the Court today approves does in this case. I think that the presumption which should govern instead in criminal trials in the courts of this country is the time-honored presumption of innocence accorded to all criminal defendants until they are proved guilty by competent evidence.

Nor can a power of Congress to detract from the constitutional power of juries and judges to decide what facts are enough to convict be implied because of the power of Congress to make procedural rules or rules of evidence. See *Ex parte Fisk,* 113 U. S. 713, 720. It is not disputed that Congress has power to prescribe rules governing admissibility of evidence and purely procedural matters. The Congress unquestionably could declare the fact of presence to be admissible evidence, for certainly it is relevant when considered along with other circumstances. Yet this power to say what shall or shall not be admissible in no way empowers Congress to determine what facts, once admitted, suffice to prove guilt beyond a rea-

sonable doubt.[13]　And I certainly cannot join the Court when it says:

> "The process of making the determination of rationality is, by its nature, highly empirical, and in matters not within specialized judicial competence or completely commonplace, significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions from it."

The implication of this statement is that somehow Congress is better qualified to decide what facts are sufficient to convict defendants than are courts and juries. I accept the proposition that Congress is the proper branch of our Government to decide legislative policies and enact general laws and that in so doing it must of necessity deal with facts to some extent. This is as the Constitution provides. But Congress is not authorized nor has it any special "expertise" with which I am familiar which entitles it to direct juries as to what conclusions they may or must draw from the unique facts of specific criminal cases tried in federal courts. Moreover, even were I to assume that Congress does have an expertise to assess facts in lawsuits which is superior to that of juries and judges, I still could not join the Court's opinion, for I think that the Founders of our Government decided for us that these are matters "within specialized"—and exclusive—"judicial

---

[13] "While it is within the province of the legislature to determine the sources of evidence, the modes of verification, who may or may not be competent witnesses, I am not prepared to say they may weigh and determine the quantity of evidence, which shall suffice to produce conviction in the mind of the judge or juror who tries a cause." Thomas, J., dissenting in *Commonwealth* v. *Williams,* 6 Gray (72 Mass.) 1, 10, cited with approval in *State* v. *Beswick,* 13 R. I. 211, 219.

competence." As this Court has said with reference to jury trial of facts:

> "whether right or wrong, the premise underlying the constitutional method for determining guilt or innocence in federal courts is that laymen are better than specialists to perform this task." *United States ex rel. Toth* v. *Quarles,* 350 U. S. 11, 18.

Besides impairing Gainey's right to trial by jury according to due process safeguards, the statutes in this case I think violated Gainey's constitutional rights in still another way. These statutory presumptions must tend, when incorporated into an instruction, as they were here, to influence the jury to reach an inference which the trier of fact might not otherwise have thought justified, to push some jurors to convict who might not otherwise have done so. Cf. *Pollock* v. *Williams,* 322 U. S. 4, 15. The undoubted practical effect of letting guilt rest on unexplained presence alone is to force a defendant to come forward and testify, however much he may think doing so may jeopardize his chances of acquittal, since if he does not he almost certainly destroys those chances. This is compulsion, which I think runs counter to the Fifth Amendment's purpose to forbid convictions on compelled testimony. The compulsion here is of course more subtle and less cruel physically than compulsion by torture, but it is nonetheless compulsion and it is nonetheless effective. I am aware that this Court in *Yee Hem* v. *United States,* 268 U. S. 178, 185, held that use of a presumptive squeeze like this one did not amount to a form of compulsion forbidden by the Fifth Amendment. The Court's reasoning was contained in a single paragraph, the central argument of which was that despite a presumption like this a defendant is left "entirely free to testify or not as he chooses." That argument, it seems to me, would also justify admitting in evidence a confession

extorted by a policeman's pointing a gun at the head of an accused, on the theory that the man being threatened was entirely free to confess or not, as he chose. I think the holding in *Yee Hem* is completely out of harmony with the Fifth Amendment's prohibition against compulsory self-incrimination, and I would overrule it. See *Feldman* v. *United States,* 322 U. S. 487, 494 (dissenting opinion); compare *Leyra* v. *Denno,* 347 U. S. 556. See also *State* v. *Lapointe,* 81 N. H. 227, 123 A. 692, quoted with approval in the opinion of the court below, 322 F. 2d 292, 296 (C. A. 5th Cir.).

For all the foregoing reasons, I think that these two statutory presumptions by which Congress has tried to relieve the Government of its burden of proving a man guilty and to take away from courts and juries the function and duty of deciding guilt or innocence according to the evidence before them, unconstitutionally encroach on the functions of courts and deny persons accused of crime rights which our Constitution guarantees them. The most important and most crucial action the courts take in trying people for crime is to resolve facts. This is a judicial, not a legislative, function. I think that in passing these two sections Congress stepped over its constitutionally limited bounds and encroached on the constitutional power of courts to try cases. I would therefore affirm the judgment of the court below and grant Gainey a new trial by judge and jury with all the protections accorded by the law of the land.