STATE OF CONNECTICUT *v.* RONALD M. DeBIASO

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 8-24663

Argued July 6—decided August 21, 1970[1]

*Hugh F. Keefe,* of New Haven, for the appellant (defendant).

*Archibald G. Marshall,* assistant prosecuting attorney, for the appellee (state).

JACOBS, J.  A jury convicted the defendant of the crime of reckless driving in violation of § 14-222 of the General Statutes.  He has appealed from the judgment rendered on the verdict.

The defendant conceded that at the time of the alleged offense, January 26, 1969, he was the owner of a motor vehicle, described as a 1955 blue Ford bearing Connecticut registration number AJ-168 and referred to by the defendant in his brief as the "offending vehicle."  He asserts that "[a]s actual operation of the motor vehicle involved was not and could not be proved, the state invoked and relied on § 14-107 of the General Statutes," which provides that "[w]henever there occurs a violation of section . . . 14-222 . . . , proof of the registration number of any motor vehicle . . . shall be prima facie evi-

---

[1] The defendant's "motion to make oral argument and vacate decision" was denied on October 7, 1970.

dence in any criminal action that the owner was the operator thereof." It is contended that this statute "is invalid because it is violative of the Fifth Amendment privilege against self-incrimination; [that] it places the burden of proof upon the accused in violation of the Fourteenth Amendment's Due Process Clause; and [that] it is founded upon an invalid presumption of criminal conduct in violation of the Fourteenth Amendment's Due Process Clause."

Professor Wigmore[2] has addressed himself to the precise question raised on this appeal, that is, "the question of the constitutionality of statutes creating . . . 'prima facie' evidence." 4 Wigmore, Evidence (3d Ed.) § 1356, p. 724. He says: "There is not the least doubt, on principle, that the Legislature has entire control over such rules [statutes declaring rebuttable presumptions or prima facie evidence], as it has (when not infringing on the Judiciary's prerogative) over all other rules of procedure in general and Evidence in particular . . .—subject only to the limitations of the rules of Evidence expressly enshrined in the Constitution. If the Legislature can abolish the rules of disqualification of witnesses and grant the rule of discovery from an opponent, it can shift the burden of producing evidence." Wigmore deplores (p. 725) the fact that "Courts have repeatedly vouchsafed an unmerited attention to the question, chiefly through a hesitation in appreciating the true nature of a presumption and a tendency to associate in some indefinite manner the notion of conclusively shutting out all evidence and that of merely shifting the duty of producing it."

---

[2] According to Professor McCormick, Wigmore's "influence in shaping the law in the field of evidence in the last generation has certainly not been less than that of the Supreme Court." McCormick, Evidence § 313, p. 655.

But in *Tot* v. *United States,* 319 U.S. 463, the Supreme Court of the United States rejected Wigmore's "the sky is the limit" approach; see McCormick, Evidence § 313, p. 655; and adopted the "rational connection" test as the controlling judicial standard. Tot had been convicted under § 2 (f) of the Federal Firearms Act; 52 Stat. 1251, 15 U.S.C. § 902 (f); making it unlawful for one previously convicted of a crime of violence to receive any firearm in interstate commerce after June 30, 1938, and providing that "possession of a firearm . . . by any such person shall be presumptive evidence that such firearm . . . was . . . received . . . by such person in violation of this Act." The only evidence adduced by the government was that on September 20, 1938, Tot was found to be in possession of a firearm and that he had previously been convicted of assault and battery. The court held there was insufficient rational connection between possession of a firearm on September 20, 1938, and interstate reception on June 30, 1938, and thus the presumption was an unconstitutional deprivation of due process. In two subsequent cases, *United States* v. *Gainey,* 380 U.S. 63, and *United States* v. *Romano,* 382 U.S. 136, the Supreme Court had further occasion to rule on the constitutionality of criminal statutory presumptions. *Gainey* involved a conviction for carrying on "the business of a distiller or rectifier without having given bond as required by law." 72 Stat. 1398, 26 U.S.C. § 5601 (a) (4). Section 5601 (b) (2) of the Internal Revenue Code of 1954 provided that proof of the presence of the accused at a still while the business of the stiller was being conducted "shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury." The court said (380 U.S. at 67): "Legislative recognition of the implications

of seclusion [of an illegal still] only confirms what the folklore teaches—that strangers to the illegal business rarely penetrate the curtain of secrecy." It held that the *Gainey* presumption should be tested by the "rational connection" standard announced in *Tot*. In *Romano,* the presumption under attack was identical to that of *Gainey* except that it authorized the jury to infer from the defendant's presence at an illegal still that he had possession, custody, or control of the still. 72 Stat. 1398, 1399, 26 U.S.C. §§ 5601 (a) (1), 5601 (b) (1). The court struck down the presumption as invalid for lack of inferential strength.

"The upshot of *Tot, Gainey,* and *Romano* is, we think, that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. And in the judicial assessment the ... [legislative] determination favoring the particular presumption must, of course, weigh heavily." *Leary* v. *United States,* 395 U.S. 6, 36.

We think that in the case before us the judgment of the legislature is likely to have much the better basis in knowledge of pertinent facts, and courts must be slow to declare that judgment so unfounded as to be incapable of acceptance by reasonable men. In other words, the legislative judgment is particularly appropriate in matters empirical. The mere circumstance that it is not always the owner of the offending vehicle who is at the wheel does not ipso facto invalidate the statute. "The basic test is whether common experience supports *the probability, not the certainty,* that, if the first fact is true, the second is also true." *People* v. *Hildebrandt,* 308 N.Y. 397, 405 (dissenting opinion).

In three recent cases we have applied the "rational connection" test as the appropriate and controlling judicial standard in ruling on the constitutionality of the statute now under attack. *State* v. *Jordan,* 5 Conn. Cir. Ct. 561, 565 (evading responsibility); *State* v. *Knudsen,* 3 Conn. Cir. Ct. 458, 461 (reckless driving); *State* v. *Schonrog,* 2 Conn. Cir. Ct. 239, 245 (evading responsibility); see note, 49 A.L.R.2d 456, 459.

We affirm the constitutionality of the statute (§ 14-107) on the clear and compelling authority of these holdings.

The defendant insists that in order successfully "[t]o rebut the statutory presumption of operation [of the automobile], it would appear imperative that the accused take the stand to explain away any possibility of his being the operator at the time in question." Thus, argues the defendant, the presumption violates the privilege against self-incrimination.[3] But the statute "says nothing about the kind of rebutting evidence. It no more compels him to be a witness than does the case made out by the prosecution without the aid of presumption." Mc-Cormick, Evidence § 313, p. 662. "The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. . . . If the accused happens to be the only repository of the facts necessary to negative the presumption . . . , that is a misfortune which the statute under review does not create but which is inherent in the case." *Yee Hem* v. *United States,* 268 U.S. 178, 185.

---

[3] Defendant's argument that the statutory presumption violates the constitutional privilege against self-incrimination "from a technical standpoint seems to have much of soundness in it," but the decisions "uniformly dismiss the objection, sometimes in quite cavalier fashion." Brosman, "The Statutory Presumption," 5 Tul. L. Rev. 17, 182.

The defendant also assigns error in the court's denial of his motion for a mistrial. The ground relied on was that "the state produced a surprise rebuttal witness and failed to identify him to the jury when the witness was in fact personally familiar with two of the jurors." The trial court's action on the motion "is not reviewable by this court . . . unless the record shows an abuse of discretion." *Bluett* v. *Eli Skating Club,* 133 Conn. 99, 104. The record shows that the two jurors, on being interrogated by the court after the verdict, disclosed that their relationship with the surprise witness was only casual and did not affect their verdict. Such casual relationship "is too remote to merit serious consideration." *McCarten* v. *Connecticut Co.,* 103 Conn. 537, 545.

There is no error.

In this opinion DEARINGTON and CASALE, Js., concurred.