## Commonwealth v. Felton

*Barbara Christie*, Assistant District Attorney, for Commonwealth.

*Gerald A. Stein, Esq.*, for defendant.

PORTER, J., May 10, 1974.—This matter comes before me for deferred adjudication, without jury, of charges of possession of "controlled substances" (narcotics) with intent to deliver.

The stipulated evidence was that Felton was lawfully confronted on the street by a policeman and dropped 50 bags of proved heroin in plain view. These are the facts as I must receive them.

Felton had on him no apparatus for personal drug use. He had not been observed in confrontation with other persons prior to arrest.

The defense argues, in effect, that the Commonwealth cannot prove its case without aid of an evidentiary presumption and that here to presume possession with intent to deliver would be unconstitutional. E.g., Leary v. United States, 395 U. S. 6 (1969); Turner v. United States, 396 U. S. 398 (1970).

The Commonwealth replies that it seeks no such presumption and merely invokes the ordinary process of evidentiary inference. E.g., Commonwealth v. Shaffer, 447 Pa. 91 (1972). The Commonwealth further contends that permitted this inference it has carried its burden of proof on the issue.

Like the tip of an iceberg, the low apparent profile of this argument conceals dimensions and potentials for impact, hereupon the "presumption" of innocence,

criminal burden of proof and the fourth, fifth and fourteenth amendment guarantees of the Federal Constitution, not readily perceived in aspect or effect.

Presumptions and inferences are tools of mind and purpose which serve somewhat related but unidentical purposes in law, especially criminal law. See generally, 9 Wigmore, Evidence (3d Ed., 1940); McCormick on Evidence, 783-835 (2d Ed., 1972).

Presumptions mandate that upon proof of lesser facts larger facts may, or must, be assumed by the trier of fact temporarily or throughout trial. They range in origin from evidentiary concerns to overriding determinations of social policy: E.g., the "presumption of innocence."

Inferences, per contra, supposedly are of lesser effect. They merely present to judge or jury of factual evaluation which they may, permissively, make from the evidence before them: If fact "A" occurs, it usually is accompanied by or otherwise is associated with fact "B" to such an extent that fact "B", upon such preliminary proof of "A", is now itself in the case as much as if proved by direct evidence.

The modes and implications of these thought processes of the trier of fact differ importantly in civil and criminal cases. I am concerned only with the latter situation and then only as the problem emerges in this limited context.

Because of their grave potential effect upon the fundamental guarantees of criminal trial process, the origins and effects of criminal trial presumptions constitutionally have been examined and evaluated in such leading decisions of the United States Supreme Court as: Tot v. United States, 319 U. S. 463 (1943); United States v. Gainey, 380 U. S. 63 (1965); United States v. Romano, 382 U. S. 136 (1965); Leary v. United States, 395 U. S. 6 (1969). See, e.g., also Mc-

Cormick on Evidence, 812-17 (2d Ed., 1972). (These were Federal cases but I cannot conceive that State standards should be less.)

In his dissenting opinion in Gainey, supra, Mr. Justice Black trenchantly indicated the dangers of *statutory* presumptions to due process in criminal trials. Id. 75-6.

Countering this, the Supreme. Court majority in those cases went far to ascertain the existence of legislative proceedings to evaluate and fix the rational enactment of those statutory criminal presumptions. The test of these statutory presumptions, of course, was due process and the court's standard was "rational connection" between the primary and presumed facts. E.g., Tot, supra.

In the case of presumptions *judicially* created in criminal cases, I must be even more concerned for several reasons. One judge or one jury is a miniscule microcosm of human experience to decide that proof of fact "A" suggests proof of fact "B" on demurrer or final adjudication.

Because of this, our constitutional structure better places this aspect of social policy-making in the hands of a broader chosen group, the legislature. To place power in the hands of judges or juries to invent *criminal presumptions,* or even to apply them without explicit, rational guidelines, patently is to invite chaos or worse. On the ordinary record, their meditations are unreviewable (compare Turner and Gainey, supra) and having no right to *define* an offense they should not have the right in our system to *redefine* or *re-create* one sub silentio. Cf. L. Hand, The Spirit of Liberty, How Far Is a Judge Free in Rendering a Decision?, 103-10 (Knopf, 1954).

My concern as to this and the considerations below is magnified by the fact that our legislature, which created the offense of drug possession with intent to

deliver, itself never has seen fit, as constitutionally it might have, to investigate, make findings and legislate an appropriate, rational presumption on this subject. More significantly, the legislature, passing *this* task for presumably valid reasons, *has* enacted a variety of substantive provisions and presumptions as to the legal significance of the quantity of possession of controlled substances affecting *other* aspects of the law. See, Passim, the Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P. L. 165 (No. 64), effective June 14, 1972, 35 PS §780.101.

With this background I turn to the point of the Commonwealth's able argument: Rather than to inflict a *presumption* on the defense stemming from the quantity of the heroin possessed, carriage on the street and the apparent lack of defendant's possession of any apparatus for personal use, should I not *infer* illegal delivery intent and should not that inference, unexplained, carry the Commonwealth's burden of proof as to this element of the offense charged?

One thrust of my decision and a point of my concern is that under our system, which is not accusatorial or confessedly compulsive of affirmative explanations by an accused person entitled to remain silent, we must indeed be careful in inflicting severe consequences upon defendants for unexplained behavior or failures to testify, by any statutory, evidentiary or procedural process, however named, or classified or disguised.

Government has total major responsibilities for criminal justice which, inter alia, may not be surrendered or intellectually delegated by incantation of such magic words as "presumption" or "inference." It is the fair, *practical* impact ultimately which counts. Cf. authorities above.

I am well aware that in many kinds of criminal

cases unexplained behavior by the accused *can* be held against him and indeed may carry the Commonwealth's *burden of proof*: e.g., possession of recently stolen property, proximate location to or apparent control of areas in which lottery material is found. But these examples, which could be multiplied, are thought processes of lesser degreé, that it is rational to assume or infer that one possessing fruits or implements of crime knows what they are and that he has them.

The evidentiary assessment requested here sub nomina "inference" is that laymen acting on the basis of inexpert "common experience" shall decide, ad hoc, and without guidance that one who possesses any given quantity of a controlled substance does or does not intend to deliver all or part of it: 50 bags, 10, 11, 8, or perhaps less.

More important, this mental process is involed to carry, absolutely, the Commonwealth's burden of ultimate proof.

If such a conclusion of delivery intent were to be permitted to be applied by the courts and juries from proof of possession of "X" amount of controlled substance, how could this inference apply, work and what rational effect possibly could it be permitted to have upon the presumption of innocence, a constitutional guarantee, the right to remain silent and other fundamental guarantees of the criminal trial process? What amount is "X"? What circumstances could refute proof of "X" *as to intent? Why should such proof of* specific intent be required, practically, to reestablish the burden of going forward with evidence? What quantum of contraband should trigger the "X" inference? What effect, if unexplained by evidence coming from, or favorable to, the defense should "X" nevertheless have on my mind or a jury's mind? Why, as normal citizens, should we be permitted to decide or

assume the equivalence of these "X" facts without more explicit proof as to matters about which we know little, especially in view of the aggravated penalties for the delivery offense? How, in short, if the very legislature which constitutionally is empowered to *create a criminal offense* is held to such short shrift (authorities, supra) as to thought processes in its enactment, can I, or a jury, mere ad hoc laymen, constitutionally be permitted to spin gossamer proof-saving devices of conviction out of cobwebs in the courtroom air.

I know that some Federal courts firmly disagree with my apparent conclusions, but I do not here hold that evidence such as this is of no value. I merely decide that, alone and unsupported by any other evidence, legislative record or court appearance of expert witnesses, it cannot constitutionally be sufficient, in itself, to prove guilt of this particular offense.

Therefore, I here am compelled to find Felton was not guilty of possession of a controlled substance with intent to deliver.

## FINDING

Defendant, David Felton, is not guilty of the charge tried at April term, 1973, no. 670.