THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CAREY KOBA *et al.*, Defendants-Appellants.

First District (4th Division)    No. 76-1529

Opinion filed February 28, 1978.

James J. Doherty, Public Defender, of Chicago (Timothy P. O'Neill and John Thomas Moran, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and James A. Hullihan, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendants, Glenn Kimmel, Paul E. Gillingham and Carey Koba, were each charged in three counts with possession and transportation of explosives without a valid license, unlawful use of weapons and possession of explosives and incendiary devices. (Ill. Rev. Stat. 1973, ch. 93, pars. 152.1 and 152.2; ch. 38, pars. 24—1(a)(7) and 20—2.) After a bench trial, Kimmel and Koba were found guilty of all counts, and Gillingham was found guilty of a single count of unlawful use of weapons. Gillingham was sentenced to a term of 5 years probation, Kimmel was sentenced to a term of 3½ to 10½ years, and Koba was sentenced to a term of 4½ to 13½ years. Koba has not pursued an appeal of his conviction.

The issues presented for review are: (1) whether section 24—1(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(c)) is unconstitutional; (2) whether finding Gillingham guilty under a statute containing a presumption but not guilty of other crimes without the statutory presumption based on the same facts, violated due process; and (3) whether Kimmel's sentence of 3½ to 10½ years is excessive.

We reverse the Gillingham conviction. We affirm the Kimmel sentence.

Two youths, Eddie Martinez and Danny Negron, each testified that on

August 10, 1975, defendants pulled up in a brown Thunderbird with a black vinyl top and Kimmel and Koba got out of the car. Kimmel stated that if they wanted to buy dynamite, the price would be $10 per stick. Later that afternoon Martinez, Negron and Louis Rivera talked to Officer Johnson and told him what had happened. Negron gave him a general description of the men in the car, and the officer asked if they could get a license number.

The boys saw all three defendants in the Thunderbird again the next day while driving in Negron's car, and Rivera wrote down the license number. Negron signalled the Thunderbird to stop, and Rivera went to the driver's side of the Thunderbird. Kimmel was driving, Koba was in the passenger side of the front seat and Gillingham was standing up listening to the conversation while Rivera and Kimmel talked. When Rivera returned to his own car, Kimmel followed him and stated he would trade the dynamite for electronic equipment or guns. The parties arranged a meeting for 8 p.m. that evening at 2844 North Clybourn.

The boys once again found Officer Johnson and gave him a better description of defendants as well as the license plate number. Later, they talked with members of a police tactical unit and still later met with defendants. When the Thunderbird arrived that evening, only Koba and Kimmel were visible in the car. The boys asked if they had the dynamite, and they answered they did. When the police car arrived, Gillingham could also be seen in the car.

Officer Richard A. Johnson testified that on August 10, 1975, he had a conversation with Negron at about 5:30 p.m., and Negron told him some people were attempting to sell dynamite. He said they were driving an older model Thunderbird, and Johnson asked Negron to get more information. He saw Negron between 5 and 5:30 p.m. the next day, and Negron gave him the license number and also a description of the men in the car.

Officer Patrick Keane testified that on August 11, 1975, he had a conversation with Officer Johnson at about 7:30 p.m. He then drove to the corner of Clybourn and Diversey and parked his unmarked police car. At 8:30 or 8:45 p.m., he pulled his car behind the Thunderbird. He testified that Kimmel was driving, Koba was in the front passenger seat and Gillingham, who appeared to be asleep, was in the back seat. He opened the trunk of the Thunderbird and found 76 sticks of dynamite and 29 blasting caps.

It was stipulated that none of the defendants had a valid license to possess or sell dynamite or blasting caps. It was also stipulated Kimmel was 29 years old, Koba 24, and Gillingham 21. Each defendant rested without calling any witnesses.

Defendant Gillingham first contends he was improperly convicted of

unlawful use of weapons. He argues the presumption contained in section 24—1(c) of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(c)) is unconstitutional because it allowed him to be convicted on a quantum of evidence less than that allowed by the reasonable doubt standard, or in the alternative, he argues the presumption fails under the more-likely-than-not standard set forth in *Leary v. United States* (1969), 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532.

The relevant portions of the unlawful use of weapons statute, section 24—1, provide as follows:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

* * *

(7) * * * possesses * * * any bomb * * * or other container containing an explosive substance of over one-quarter ounce * * *;

* * *

(c) The presence in an automobile * * * of any weapon, instrument or substance referred to in Subsection (a)(7) is prima facie evidence that it is in the possession of * * * *all* persons occupying such automobile * * *." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 38, pars. 24—1(a)(7) and 24—1(c).

In *People v. Hood* (1971), 49 Ill. 2d 526, 276 N.E.2d 310, our supreme court reviewed section 24—1(c) and stated it need not decide whether that section was constitutional insofar as it might affect every occupant of an automobile; it held only that the statute was valid where defendant was both driving and in control of the car.

The United States Supreme Court has considered the due process limitations of criminal presumptions but on two occasions specifically declined to rule that a presumption must satisfy the reasonable doubt standard in order to meet due process requirements. *Leary v. United States* (1969), 395 U.S. 6, 36, 23 L. Ed. 2d 57, 81-82, 89 S. Ct. 1532; *Barnes v. United States* (1973), 412 U.S. 837, 844, 37 L. Ed. 2d 380, 386, 93 S. Ct. 2357.

In *Leary* the court relied on *Tot v. United States* (1943), 319 U.S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241, *United States v. Gainey* (1965), 380 U.S. 63, 13 L. Ed. 2d 658, 85 S. Ct. 754, and *United States v. Romano* (1965), 382 U.S. 136, 15 L. Ed. 2d 210, 86 S. Ct. 279. It stated that a criminal statutory presumption must be regarded as "irrational" or "arbitrary" and hence unconstitutional unless it can be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.

Statutes similar to section 24—1(c) have been struck down in two

instances based on the "more-likely-than-not" standard approved in *Leary*. In *State v. Watson* (1973), 165 Conn. 577, 345 A. 2d 532, the Connecticut Supreme Court stated that imputing knowledge of a weapon in a vehicle to an occupant without proof of any other relevant circumstance would be based on pure speculation and could not meet the standards set forth in *Leary*. In *Allen v. Ulster County Court* (2d Cir. 1977), 568 F.2d 998, the Federal Court of Appeals found a New York statute to be unconstitutional, stating that the presence of a gun in a car may cast some suspicion on all the occupants of the car, but without an additional showing its connection with possession was too tenuous to permit a reasonable inference of guilt. The court concluded that it could not be said with substantial assurance that the presumed fact (possession of a gun by occupants of an automobile) is more likely than not to flow from the proven fact (presence of a gun in the car), and the New York statutory presumption making the latter "presumptive evidence" of the former was unconstitutional on its face.

While these cases place the constitutionality of section 24—1(c) in substantial doubt, it is not necessary to reach the constitutional issue in this case.

In *United States v. Black* (9th Cir. 1975), 512 F.2d 864, the statute in question provided that any transfer of a controlled substance was nonauthorized, and consequently criminal, unless the accused produced evidence that the transfer was lawful. The court stated that when sufficient facts have been shown to render the statutory presumption of guilt irrational as applied to those particular facts, the presumption may not be then used to justify the imposition of a further burden of production or to deprive the accused of a factual determination upon the disputed issue; the State must then prove its case. Citing *Notaro v. United States* (9th Cir. 1966), 363 F.2d 169, 174, and *Rodgers v. United States* (9th Cir. 1968), 402 F.2d 830, 834, the court noted that it is irrelevant who produces the facts in issue, and defendant's burden of production may be met either by his own evidence or by the prosecution's case-in-chief.

In this case, Gillingham chose not to testify, but there was apparently sufficiently exculpatory evidence adduced in the State's case-in-chief to cause the trial court to find him not guilty of possession of explosives without a license as set forth in count I of the indictment and of possession and transportation of explosives and incendiary devices as set forth in count III of the indictment. Ill. Rev. Stat. 1973, ch. 38, par. 20—2; ch. 93, pars. 152.1 and 152.2.

■■ Thus, as here, where the offense of unlawful use of weapons as charged in count II of the indictment is bottomed on proof of possession (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(7)), the statutory presumption of

guilt must necessarily have been rendered irrational as applied to the facts in this case where Gillingham was found guilty of count II, "unlawful use of weapons."

Under these circumstances the State could not properly invoke the presumption. Therefore, it was error to find Gillingham guilty of unlawful use of weapons and accordingly his conviction must be reversed.

■■ Defendant Kimmel argues that his sentence of 3½ to 10½ years was excessive based on the facts that he was 29 years old, married, supported two young children and had never before been convicted of a felony. He argues the court relied solely on the nature of the crime in meting out punishment, and failed to take into consideration his rehabilitative potential.

In *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, the court noted the trial court's concern for defendant's rehabilitation as reflected in the spread between the minimum and maximum sentences and affirmed its long-standing rule that absent an abuse of discretion by the trial court a sentence may not be altered upon review.

In this case the sentence imposed was well within the statutory limits of 1 to 20 years (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1), and there was a spread of 7 years between the minimum and maximum sentences. The record shows the trial court received a presentence report and was apprised at the hearing in aggravation and mitigation of all the facts argued on appeal. We find that the severity of the crime in terms of potential harm was great and that the trial court did not abuse its discretion in imposing sentence.

For these reasons, the judgment of the circuit court of Cook County as it pertains to Gillingham is reversed; and the judgment as it pertains to Kimmel is affirmed.

Reversed in part and affirmed in part.

JOHNSON, P. J., and ROMITI, J., concur.