## 37166. WILLIAMSON v. THE STATE.

GREGORY, Justice.

We granted certiorari in this case to consider two questions. First, whether the well-settled rule in this state that recent, unexplained possession of stolen property permits the jury to infer that the accused committed the theft, survives scrutiny under Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Second, whether the jury charge in this case on the aforementioned rule violates due process by shifting the burden of persuasion to the defendant.

The defendant Bobby Lee Williamson was convicted of burglary and sentenced to ten years. Glenda Jenkins testified at trial that, on the evening of June 25, 1979, she returned home from work to find that her apartment had been broken into. Jenkins testified that a refrigerator, placed against the back door of her apartment to make the dwelling more secure, had been moved away from the door. The refrigerator cord had been cut, but Jenkins stated that the food in the refrigerator was still cold. Among the numerous items missing from her apartment were a component stereo set, television, clock radio and some personalized checks. Jenkins reported the model and serial numbers of the stolen items to investigating police officers. Several days later police recovered the stereo, television and radio when daily log-sheets from a local pawn shop, listing the model and serial numbers of all items pawned, established that these items had been

pawned on the afternoon of June 25, 1979. The pawn tickets had been made out to the defendant and indicated his driver's license number. At trial police officers testified that the defendant admitted to them he had pawned the items, but stated that they did not belong to him; rather, he insisted that they belonged to a male friend who did not have the requisite identification to pawn them. Defendant stated that he had pawned them in his own name as a favor to his friend. At trial the defendant denied making this statement to police and testified that around 3:30 on the afternoon of June 25, he had pawned the items in his name for his girl friend because she did not have a driver's license.

Police also recovered a number of the checks stolen from Jenkins' apartment which had been forged. Police officers testified the defendant admitted to them that he had driven his girl friend around town while she cashed a number of the checks. At trial, defendant denied making this statement. On appeal defendant argued that the evidence was not sufficient to support the verdict.

The Court of Appeals affirmed the defendant's conviction, stating, "The evidence was sufficient to establish beyond a reasonable doubt that, several hours after the burglary, appellant was in possession of items taken from the victim's apartment. In *Humes v. State,* 143 Ga. App. 229, 229-330 (237 SE2d 704) (1977), it was held: 'When property alleged to be stolen is proven to be stolen property and the crime charged has been committed by someone, the recent unexplained possession of the stolen property by the defendant is a circumstance from which guilt may be inferred. *Gilliard v. State,* 17 Ga. App. 364 (86 SE 939) (1915). From this, it may be inferred that the defendant charged committed the theft proven. This being so, no further proof, circumstantial or direct, showing that the appellant committed the burglary was necessary for conviction.' " The court, however, expressed "grave doubts" as to the validity of this rule under the holding of Jackson v. Virginia, supra.

(1) (a) While it is the rule in this state that recent unexplained possession of stolen property permits the jury to infer that the accused committed the theft, "it should be emphasized that the recent unexplained possession creates only a permissible inference of guilt of a 'presumption of fact,' in terms of Code § 38-113 which the jury may or may not draw." *Byrd v. Hopper,* 234 Ga. 248, 250-51 (215 SE2d 251) (1975). "The nearer the possession to the time of the [theft], the stronger will be the inference of guilt; and the question of the result of the lapse of time is for the jury." *Chubbs v. State,* 204 Ga. 762, 764 (51 SE2d 851) (1949). Recent unexplained possession of stolen goods "is a circumstance sufficient to authorize the jury to find that the accused is guilty as charged [assuming other elements of the

crime are proved], but it does not create a presumption of law against the accused, and it is not of itself necessarily proof of his guilt." *Gravitt v. State,* 114 Ga. 841 (40 SE 1003) (1902). "[T]he greatest length to which the rule is carried out is that it is sufficient to warrant the conviction of the accused." Id. at 842.

To convict an accused under this rule, the State must prove that (1) the goods in the accused's possession were recently stolen and (2) someone committed the crime. If there is no satisfactory explanation of the defendant's possession, then the "proof of these facts beyond a reasonable doubt creates a presumption or permissible inference of defendant's guilt." *Selph v. State,* 142 Ga. App. 26, 29 (234 SE2d 831) (1977).

(b) In Jackson v. Virginia, supra, the United States Supreme Court examined the constitutional underpinnings of Thompson v. Louisville, 362 U. S. 199 (80 SC 624, 4 LE2d 654) (1960) and In re Winship, 397 U. S. 358 (90 SC 1068, 25 LE2d 368) (1970) in order to determine the appropriate standard for evaluating the evidence on review in a federal habeas corpus case.

Thompson, supra, held that a conviction based upon a record devoid of any evidence of a crucial element of the offense charged is constitutionally infirm. Prior to Jackson, federal courts reviewed state court convictions on petition for habeas corpus to determine if the conviction was supported by "some evidence."[1] Rarely did the federal courts undertake a review of the sufficiency of the evidence.[2] In Winship the court concluded that the due process clause of the Fourteenth Amendment constitutionally protects an accused against conviction except upon evidence that is sufficient to support a conclusion that every element of the crime has been established beyond a reasonable doubt. The Jackson court rejected the Thompson "no evidence" standard as "simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt," Jackson at 2790, and concluded that Winship established the quantum of proof constitutionally demanded for a valid determination of guilt. The court then went on to say that, on review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, *and to draw reasonable inferences from basic facts to ultimate facts."* Jackson at 2789. (Emphasis supplied.)

---

[1] "The Supreme Court, 1978 Term," 93 Harvard L. Review 60, 211 (1979-80).
[2] See generally, Comment, "Federal Review of the Evidence Supporting State

It has been argued that the standard for review promulgated in Jackson "intrudes upon the factfinder's discretion only to the extent necessary to protect defendants from convictions that clearly offend due process,"[3] and that this new standard "though permitting an evaluation of the . . . evidence, may in fact be no more rigorous than the Thompson standard as it was used in practice."[4]

Before examining the inference in this case in light of Jackson v. Virginia, it is helpful to consider decisions by the United States Supreme Court which have analyzed the uses of presumptions and inferences.

(c) The Supreme Court has noted that "[i]nferences and presumptions are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts. [Cits.]. The value of these evidentiary devices and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and [ultimate] facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently."[5] Ulster County, New York v. Allen, 442 U.S. 140, 156 (99 SC 2213, 60 LE2d 777) (1979).

In Tot v. United States, 319 U.S. 463, 467 (63 SC 1241, 87 LE 1519) (1943) the Court outlined the limits which the 5th and 14th Amendments place "upon the power . . . to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated." The Court concluded that an inference or presumption could not be sustained if there was "no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience." Id. 467.

Twenty years later the Court applied this test to two closely-related statutory presumptions, upholding one and striking down the other.

---

Convictions: Jackson v. Virginia," 79 Columbia L. Review, 1577-89 (1979).

[3] Id. at 1581.

[4] 93 Harvard L. Review 210, fn. 50 at 215 (1979).

[5] For a brief history on the use of legislatively created presumptions, see 56 North Dakota L. Review 421 (1980); see generally, "Structuring Jury Decision Making in Criminal Cases: A Unified Constitutional Approach to Evidentiary Devices," 94 Harvard L. Review 321-368 (1980).

In United States v. Gainey, 380 U. S. 63 (85 SC 754, 13 LE2d 658) (1965), the defendant was convicted under 26 USC § 5601 (a) (4) of "carrying on" the business of an illegal distillery. The trial court charged the jury that 26 USC § 5601 (b) (2) created a presumption that the defendant's presence at the site of the still was sufficient evidence to authorize his conviction under § 5601 (a) (4) unless he explained his presence to the satisfaction of the jury.

To determine whether there was a rational connection between the fact proved (presence at the site of the still) and the fact presumed (that the defendant was "carrying on" the business of a distiller), the court examined the evidentiary basis of the presumption. Noting that "manufacturers of illegal liquor are notorious for the deftness with which they locate arcane spots for plying their trade," and that "strangers to the illegal business rarely penetrate the curtain of secrecy" at the site of a still, the court concluded that it is rational to presume that anyone present at the site is engaged in "carrying on" the business of a distiller. Id. at 67-8. Thus, the court found the presumption in Gainey to be constitutionally sound.

In United States v. Romano, 382 U. S. 136 (86 SC 279, 15 LE2d 210) (1965) the defendant was convicted under 26 USC § 5601 (a) (1) which made it a crime to have possession or custody of a still. The trial court charged the jury that 26 USC § 5601 (b) (1) creates a presumption of possession and control of the still from the proved fact of the defendant's presence at the site of the still.

Looking back to Gainey, supra, the Supreme Court noted that a person present at the site of a still "is at the very least aiding and abetting the substantive crime of carrying on the illegal distilling business." Romano, at 141. However, presence at the site of the still carries "no legitimate, rational or reasonable inference" of possession or custody of the operation. Id. Concluding that the connection between the proved fact and the presumed fact in this case was "too tenuous," the Court struck down the statutory inference in 26 USC § 5601 (b) (1). Id.

In Leary v. United States, 395 U. S. 6 (89 SC 1532, 23 LE2d 57) (1969), the court added a gloss to the "rational connection" test set out in Tot, supra. In that case the defendant was convicted under 21 USC § 176 (a) for knowingly transporting illegally imported marijuana, knowing it to have been illegally imported.

A subsection of this provision stated that possession of marijuana by the defendant is "deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury." The trial court accordingly charged the jury that they could presume Dr. Leary had transported illegally

imported marijuana, knowing it to have been illegally imported, if they found he was in possession of the drug.

Following an examination of the legislative history behind the statute and an extensive consideration of the methods in which one in possession of marijuana can acquire knowledge of its origin, the Court determined that, while the majority of marijuana sold in this country is imported, "a significant percentage of domestically consumed marihuana may not have been imported at all." Id. at 46. Thus, to say that the majority of those persons in possession of marihuana know of its source "would be no more than speculation." Id. at 53.

The Court stated that "[t]he upshot of Tot, Gainey and Romano is, we think, that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Id. at 36. Applying this standard the court found the presumption created by § 176 (a) to be unconstitutional.

The Court applied the "more-likely-than-not" standard set out in Leary in Turner v. United States, 396 U. S. 398 (90 SC 642, 24 LE2d 610) (1970). There the defendant was convicted under 21 USC § 174 for knowingly transporting heroin and cocaine, knowing both narcotics to have been illegally imported. A subsection of § 174 authorized the jury to convict under this statute if they found the defendant in possession of the drugs, unless he explained his possession to their satisfaction. The trial court charged the jury that they could presume from the defendant's possession of heroin and cocaine that he had knowledge that the narcotics were illegally imported. Finding that "the overwhelming evidence is that the heroin consumed in the United States is illegally imported," Id. at 415-16, the Court stated that " 'common sense' tells us that those who traffic in heroin will inevitably become aware that the product they deal in is smuggled." Id. at 417. Thus, the Court concluded, "[there is] little doubt that the inference of knowledge from the fact of possessing smuggled heroin is a sound one." Id.

However, examining the presumption with respect to the cocaine conviction, the Court reached a different result. The Court found, based on U. S. Treasury Department records, that "much more cocaine is lawfully produced in this country than is smuggled into this country." Id. at 418. In striking Turner's cocaine conviction, the Court stated that "[a]pplying the more-likely-than-not standard employed in Leary, . . . we cannot be sufficiently sure either that the cocaine that Turner possessed came from abroad or that Turner must have known that it did." Id. at 419.

In Barnes v. United States, 412 U. S. 837 (93 SC 2357, 37 LE2d

380) (1973) the defendant was charged with possession of stolen U. S. Treasury checks, knowing them to have been stolen. The U. S. Supreme Court approved a charge that "possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen." Id. at 839-840.

The Court reexamined its holdings in Gainey, Romano, Leary and Turner, conceding that the terms "rational connection," "more likely than not" and "reasonable doubt" "bear ambiguous relationships to one another." Barnes, at 843. The Court stated "what has been established by the cases, however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process." Id.

The Court noted that the presumption which the jury in Barnes was permitted to draw is a "traditional common-law inference deeply rooted in our law. For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods." Id. at 843. The Court noted, however, that "this impressive historical basis" was "not in itself sufficient to establish the instruction's constitutionality. Common law inferences, like their statutory counterparts, must satisfy due process standards in light of present-day experience." Id. at 844-845.

In analyzing this presumption, the Court considered the evidence that Barnes was in possession of stolen Treasury checks payable to persons he did not know, and that Barnes made no "plausible explanation for such possession consistent with [the evidence]. On the basis of this evidence alone common sense and experience tell us that [Barnes] must have known or been aware of the high probability that the checks were stolen." Id. This evidence "was clearly sufficient" to enable the jury to find beyond a reasonable doubt that Barnes knew the checks were stolen. The Court concluded that since this inference met the reasonable doubt standard, it satisfied due process.

Most recently the Supreme Court has examined the relationship of presumptions to due process in Ulster County, New York v. Allen, 442 U. S. 140, supra. In this case the Court upheld a New York statute which provides that the presence of a firearm in an automobile is

presumptive evidence of its illegal possession by all persons occupying the automobile. Three adult men and a 16-year-old girl were convicted under this statute for possession of two loaded handguns found lying across the girl's open handbag when the automobile in which they were riding was stopped for speeding. The trial court instructed the jury that they could presume possession of the handguns from the defendants' presence in the car. The Supreme Court rejected the defendants' claim that this presumption, as applied to them, violated due process.

The Court noted at the outset of its analysis that the ultimate test of a presumption's constitutional validity in a criminal case is that the presumption "must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." Id. at 156. See, In re Winship, 397 U. S. 358, supra, and Mullaney v. Wilbur, 421 U. S. 684 (95 SC 1881, 44 LE2d 508) (1974).

The Court then stated that whether a presumption comports with due process will be tested by whether the device is a "permissive" or "mandatory" presumption. A permissive presumption is one which "allows—but does not require—the trier of fact to infer the [ultimate] fact from proof by the prosecutor of the basic [fact]." Ulster County at 157. Proof of the basic fact by the prosecutor may constitute prima facie evidence of the ultimate fact. The Court noted that a permissive presumption "places no burden of any kind on the defendant." Id. The permissive presumption advises and guides the jury as to what conclusions they may draw from the circumstantial evidence presented at trial.[6] The party challenging the permissive presumption must demonstrate its invalidity as applied to him. Ulster County, at 157.

A mandatory presumption, on the other hand, "tells the trier that he or they *must* find the [ultimate] fact upon proof of the basic fact." Ulster County, supra, at 157. Furthermore, under Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979), if the ultimate fact is "intent" which is an element of the crime charged, its proof may not rest wholly or in part on a mandatory presumption.

"In deciding what type of inference or presumption is involved in a case, the jury instructions will generally be controlling." Ulster County, at 157, note 16. The language used and the focus of the instructions will usually determine whether the trier of fact is

---

[6] See, "The Evolving Use of Presumptions in the Criminal Law: Sandstrom v. Montana," 41 Ohio State L. Journal 1145 (1980).

required, or merely permitted, to draw the presumption in question.

In concluding that the presumption challenged in Ulster County was permissive rather than mandatory, the Court took into account that the trial court's instructions made it clear that the inference was permissible and could be ignored by the jury even if the defendants offered no rebuttal evidence; further, the inference accounted for only a portion of the prosecution's case; the trial court also fully charged the jury on the presumption of innocence in favor of the defendants. "In short, the instructions plainly directed the jury to consider all the circumstances tending to support or contradict the inference." Id. at 162.

The Court found that, as applied to the facts of the case, the presumption was not only "entirely rational," Id. at 163, but that it satisfied the Leary test. Id. at 165.

The defendants urged, however, that the presumption should be judged by a "reasonable doubt" test rather than the "more-likely-than-not" standard set out in Leary, supra. That is, the defendants argued that a presumption does not satisfy due process requirements unless the evidence necessary to establish the basic fact is sufficient for a rational trier of fact to find the ultimate fact beyond a reasonable doubt.

In response to this argument the Court reasoned that the prosecution may offer as part of the proof of an ultimate fact evidence upon which the permissive presumption is based. In such a case the reasonable doubt standard is to be applied to all the evidence in the record, including the permissive presumption, "There is no more reason to require a permissive . . . presumption to meet a reasonable-doubt standard before it may be permitted to play any part in a trial than there is to require that degree of probative force for other relevant evidence before it may be admitted. As long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need only satisfy the test described in Leary." Id., 167.

The Court noted that the "beyond a reasonable doubt" standard affects the use of a permissive presumption "only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination." Id. at 157.[7]

---

[7] Some commentators have suggested that, under this test, a permissive presumption which does not fully comport with due process, may be upheld in a case

Since the presumption in Ulster County was permissive and satisfied the "more-likely-than-not" test, the Court concluded that the prosecution could rely on the "record as a whole" to establish the defendants' guilt beyond a reasonable doubt.

Where the ultimate fact is an element of the crime charged, it may not rest on a mandatory presumption. This is true in a case where the presumption is the *only* proof of the ultimate fact, and it is true in a case where there is additional proof of the ultimate fact apart from the presumption. If the presumption is mandatory, it is irrelevant whether or not there is other evidence in the record in addition to the basic facts from which the presumption is drawn.

If the prosecution relies on a permissive presumption as evidence of the defendant's guilt, but offers other evidence of the defendant's guilt, the State may rely on all of the evidence in the record to meet the beyond a reasonable doubt standard. Id. at 167. There need be only a "substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Leary, supra, at 36; Ulster County, supra, at 167. Where the permissive presumption is but one portion of the State's case, it will not be possible to determine whether, in convicting, the jury drew the presumption or not; consequently, on review the court must determine whether, based on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. Id; Jackson v. Virginia, supra. This is so even if there is evidence in rebuttal of the presumption. Where, however, the permissive presumption is the "sole and sufficient basis for a finding of guilt,"[8] it is not enough that the presumption meets the Leary "more-likely-than-not" test. Where the permissive presumption is the *only* evidence offered by the State to prove an essential element of the offense, and the jury finds the defendant guilty, it necessarily follows that the jury drew the permitted presumption. In order to satisfy the test of Jackson v. Virginia and In re Winship, supra, the presumed fact must follow from the proved fact *beyond a reasonable doubt.* If the presumption satisfied only the Leary test, that is, the presumed fact was "more-likely-than-not" to follow from the proved fact, then the jury, relying on this evidence alone, would be permitted to convict the defendant without finding that he was guilty beyond a reasonable doubt.

---

where the State presents other evidence from which the jury could find the defendant guilty beyond a reasonable doubt. See, "A New Standard for Presumptions in Criminal Cases: Ulster County Court v. Allen", 41 Boston College L. Review 990 (1980).

[8] This situation may arise (1) where the only evidence in the case is the permissive

Applying the foregoing considerations to the inference in the case before us, we first turn to the trial court's charge on "recent, unexplained possession" to determine whether the presumption is permissive or mandatory. Ulster County, at 158, Note 16. The trial court charged the following to the jury:

"If you find that the crime of burglary has been committed as charged in this indictment and that certain personal property as set forth in the indictment was stolen as a result of such crime, and if recently thereafter the defendant should be found in possession of the stolen property or any of the stolen property that would be a circumstance along with all the other evidence adduced from which the jury may infer guilt, unless, of course, the defendant should make an explanation of his possession of the stolen property consistent with his pleas of innocence, which, again, is a question for you, the jury, to determine."

The trial court's instruction indicated that the jury was permitted, but not required, to find on proof by the State that a burglary had been committed and the defendant had possession of the stolen goods recently after the commission of the crime, that the defendant had committed the crime. Thus, even if the jury found the defendant was in "recent, unexplained possession" of the stolen goods, the permissive presumption did not require them to convict. Further, the instruction indicated that if the defendant satisfactorily explained his possession of the stolen goods, the jury would not be permitted to draw the presumption. Subsequently the trial court made full charges on the defendant's presumption of innocence and the State's burden of proving every element of the crime beyond a reasonable doubt. We do not find that this presumption invades the trier of fact's responsibility to find the ultimate facts beyond a reasonable doubt.[9] We conclude that the inference, as charged in this case, was permissive rather than mandatory under the standards set out in Ulster County, supra.

---

presumption itself, or (2) where the presumption is relied on by the State, but there is evidence offered in contradiction to it.

[9] While, under the facts of this case, we find the trial court's charge to be adequate, this court approves the following charge on "recent, unexplained possession" in burglary cases where the presumption is the *sole evidence* that the defendant was the perpetrator of the crime.

"I charge you that if you find the crime of burglary has been committed in the way and manner charged in the indictment, and certain personal property was stolen as a result of the burglary, and if recently thereafter, the defendant was found in possession of such stolen property or any part thereof, you will be permitted, but not required, to infer that the defendant committed the burglary. If you find from the

We also find that there is a rational connection between an accused's possession of stolen property recently after the commission of the crime and the fact that the accused is the thief. The presumption simply recognizes that possession has probative value in the determination of guilt.

Where, as here, the only evidence which proves the defendant is the perpetrator of the crime is his possession of the stolen items, the trial court must initially determine whether there is sufficient evidence to charge the presumption to the jury. If the trial court submits the presumption to the jury, the trier of fact must find that the presumed fact (the defendant committed the crime) follows from the proved facts (proof of a burglary and recent, unexplained possession of stolen goods by the defendant) *beyond a reasonable doubt.*

(d) The defendant admitted pawning the stolen items in a pawn shop several miles from the victim's apartment at 3:30 p.m. on June 25, 1979. Based upon the victim's testimony, the burglary necessarily occurred after she left her apartment at 7:30 a.m. on that day. There was also testimony offered to show that the defendant drove his girl friend to various banks to cash checks taken in the burglary. We conclude that, based on this evidence, a rational trier of fact could have found the defendant guilty of the crime of burglary beyond a reasonable doubt.

Left to be determined is whether the charge on this inference impermissibly shifted the burden of persuasion to the defendant.

(2) In Sandstrom v. Montana, 442 U. S. 510, 515, supra, the Supreme Court held that a jury charge that " 'the law presumes that a person intends the ordinary consequences of his voluntary acts' " violates due process.

The Court noted that the "threshold inquiry" in a constitutional analysis of "this kind of jury instruction is to determine the nature of the presumption it describes." Id. at 514. Significant to this determination is the way in which a rational trier of fact might have perceived the instruction.

In Sandstrom, the Court noted that the jurors "were not told that they had a choice or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable

---

evidence that there is another explanation of the defendant's possession, consistent with his innocence, you may not draw an inference that he committed the burglary. There being no other evidence that the defendant was the perpetrator of the crime, before you can convict, you must believe the existence of the inferred fact beyond a reasonable doubt."

juror could easily have viewed such an instruction as mandatory." Id. at 515. The Court found that the jury could have interpreted the instruction "as an irrebuttable direction by the [trial] court to find intent once convinced of the facts triggering the presumption." Id. at 517. Alternatively, the jury may have understood the instruction as a direction to find intent upon proof of the defendant's voluntary actions "unless the *defendant* proved the contrary by some quantum of proof . . . thus effectively shifting the burden of persuasion on the element of intent" to the defendant. Id. Either interpretation, the Court concluded, had the effect of relieving the prosecution of the burden of proving beyond a reasonable doubt every fact necessary to constitute the crime.[10] Id. at 521. For this reason the instruction violated Sandstrom's right to due process. See, In re Winship, 397 U. S. 358, 364, supra. The Court also determined that "[a] presumption which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant, would have suffered from similar [constitutional] infirmities." Sandstrom, at 524. Thus, the import of Sandstrom is that due process precludes the proof of a con-stitutionally necessary element of the crime by way of a conclu-sive presumption.[11]

We are called upon to decide whether, in this case, the language in the trial court's charge, instructing the jury that they might infer the defendant committed the crime upon proof that he was in possession of the stolen goods recently after the commission of the crime, "unless . . . the defendant should make an explanation of his possession of the stolen property consistent with his pleas of innocence" unconstitutionally shifted the burden of persuasion to the defendant in this case. We conclude that it did not.

As we held in Division 1, the presumption in this case was permissive rather than mandatory. We think that a rational trier of fact would have understood that he had a choice in deciding whether to draw the inference and would not have interpreted the court's charge as "an irrebuttable direction" to find that the defendant had committed the crime. Sandstrom, at 517. Furthermore, the challenged language does not require the defendant to prove "the contrary by some quantum of proof," Id., but, rather, indicates to the jury that if a satisfactory explanation of the defendant's possession *is*

---

[10] It is significant to note that in reviewing the line of cases exemplified by Tot, Gainey, Romano, Leary, Turner and Ulster County, supra, the Court concluded that they "did not . . . involve presumptions of the conclusive or persuasion-shifting variety." Sandstrom at 519-20, Note 9.

[11] See, "Presumptions in Criminal Cases — A New Look at an Old Problem," 41 Montana L. Review 21 (1980).

made, they are not permitted to draw the presumption. Thus the language does not have the effect of shifting the burden of persuasion to the defendant but simply advises the jury that, under certain circumstances, they are not entitled to draw the presumption. Consequently, we hold that the instruction in this case is not constitutionally impermissive.

*Judgment affirmed. Jordan, C. J., Hill, P. J., Marshall and Clarke, JJ., concur. Smith, J., disqualified.*

DECIDED SEPTEMBER 8, 1981.

*Charles S. Thornton,* for appellant.
*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney,* for appellee.