## 70791. COLLINS v. THE STATE.
### (337 SE2d 415)

BEASLEY, Judge.

David Randolph Collins appeals from his conviction and sentence for burglary.

At approximately 3:30 a.m. on June 18, 1984, a fire at the residence of Oren T. McKenzie was reported to the Albany Police Department. At the time of the fire McKenzie was away from home. He returned from his trip on the afternoon of the 18th to find his house burned to the ground. McKenzie inspected the charred debris and determined that a number of items, or their remains, were not in their accustomed place, such as two televisions, an adding machine, a typewriter, an electric can opener, some cabinets, some television satellite equipment, an electric trolling motor, a five-horsepower outboard motor, and some smaller items.

Half an hour later, Officer Murphy with the Uniform Division of the Albany Police Department, picked up a ten-year-old boy who was running along Turner Field Road. The boy told the officer that his uncle had run out of gas and that he was going to his aunt's house to get help. The officer put the child in the patrol car and took him to the car which was stopped a few feet from Bob's Lawn Mower Shop. Though it was dark outside, Officer Murphy could discern that the car was a four-door, Maverick-Comet type of car, that the trunk was open and that there were several rather square bulky items in the trunk and in the back seat; in fact the trunk was wide open to accommodate a large item which appeared to Officer Murphy to be a television. Appellant Collins was in the driver's seat and appellant's brother was also in the car. Collins asked Officer Murphy to take him to get some gas and after the officer responded that he was not permitted to do so, Collins said that he did not have any money, and that they would have to go after some gas. He asked the officer to watch the car until they returned because they had some television sets and other things in the car and they could not lock the car up. The officer could not stay but returned to the scene approximately fifteen minutes later to find the car and its occupants gone.

Also early on the morning of June 18, a burglary at Bob's Lawn Mower Shop was reported to the Albany Police Department. The two

detectives assigned to investigate received information that Officer Murphy had seen appellant and his brother near the lawn mower shop in the pre-dawn hours of the same day. The detectives knew that the brothers had a sister who owned a green Ford Maverick that fit the description of the car seen by Officer Murphy. They went to the sister's home and found the car with one tire flat, parked beside the driveway. A young woman at the residence said there was no one else at home. As the detectives were leaving the residence, they passed by the parked car and observed several pieces of electronic equipment such as a hummingbird depth finder and a trolling motor. They left the items undisturbed inside the car and called Officer Smith to act as a stakeout observer of the automobile so that they could return to the burglarized lawn mower shop to find out a more complete list of what had been taken. While at the shop, the detectives received a radio transmission that Officer Smith had observed two white males, apparently appellant and his brother, come up to the car and raise the hood as though they were trying to get the car started. The detectives returned to the sister's residence and were authorized to enter the home by appellant's wife. They went inside, looked around and found appellant in a closet in one bedroom and his brother under the bed in another bedroom. The brothers disclaimed any knowledge of the items in the car, i.e., what they were, how they got there or who they belonged to. They were then taken down to the police station. An inventory of the car disclosed, *inter alia*, a hummingbird depth finder, satellite television control equipment, a trolling motor, a portable television and an AC adaptor. Upon determining that these items had not been taken from the lawn mower shop, the detectives attempted to find out from other law enforcement agencies if any such equipment had been reported missing or stolen. Shortly thereafter, the Dougherty County Police Department received a report from Oren McKenzie that similar items were missing from his burned home. The recovered equipment was stored overnight in the detective division and the following morning McKenzie came to the office and identified the equipment as being his. Apparently he had an inventory or list with him and checked appropriate serial numbers on the items at the station.

Subsequently, appellant and his brother were convicted of burglary of McKenzie's home.

1. Collins maintains that the trial court erred in failing to grant a directed verdict in his favor and then in denying his motion for new trial which was based upon the general grounds.

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use

as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof." OCGA § 16-7-1.

When property alleged to be stolen is proven to be stolen property and the crime charged has been committed by someone, the recent unexplained possession of the stolen property by a defendant is a circumstance from which guilt may be inferred. From this it may be inferred that the defendant charged committed the theft proven. This being so, no further proof, circumstantial or direct, showing that the defendant committed the burglary is necessary for conviction. *Atkins v. State*, 155 Ga. App. 390, 391 (271 SE2d 35) (1980); *Rakestraw v. State*, 155 Ga. App. 563, 564, 565 (271 SE2d 696) (1980). Accord *Nash v. State*, 166 Ga. App. 533, 535 (304 SE2d 727) (1983).

At trial, appellant offered no explanation for the presence of the stolen items in the car. There was evidence that Collins exercised control or dominion over the car during the time frame of the burglary of McKenzie's home. Once it is shown that goods were stolen in a burglary, absence of or unsatisfactory explanation of the possession of the goods will support a conviction for burglary based upon recent possession of the stolen goods. See *Bankston v. State*, 159 Ga. App. 342, 343, 344 (4) (283 SE2d 319) (1981), cert. denied, 454 U. S. 1154 (102 SC 1026, 71 LE2d 311) (1982); *Jackson v. State*, 159 Ga. App. 287, 288 (1) (283 SE2d 353) (1981). Whether a defendant's explanation of possession is satisfactory is a question for the jury (*Brown v. State*, 157 Ga. App. 473, 474 (1) (278 SE2d 31) (1981); *Bankston v. State*, supra at 344 (4)); so is lack of explanation. What constitutes recent possession is in all cases a jury question, to be determined very largely from the character and nature of the stolen property, *Brown v. State*, supra at 474.

The argument has been raised that here there was insufficient identity of the stolen articles to rely upon recent possession for a conviction in the case. It is true that in a burglary prosecution where the state relies upon the defendant's recent possession of allegedly stolen or feloniously taken goods for conviction, it is absolutely essential that the identity of stolen articles be indisputably established. *Tommie v. State*, 158 Ga. App. 216, 218 (4) (279 SE2d 510) (1981). Both the victim and law enforcement officers involved in the case testified to some extent about the identity of the goods in question. Even a failure of sufficient identity here would not require a new trial because this is not a case solely of recent possession. A fellow inmate of appellant and his brother in the Dougherty County jail, one Wages, apparently contacted Detective Taylor of the Dougherty County Police Department to offer a statement inculpating appellant and his brother in the burglary of McKenzie's home. Wages' statement was that the brothers told him they went to a house in Putney, took boat

motors and other things, and burned the house to hide their fingerprints. At trial Wages admitted making the statement but tried to repudiate its veracity, saying he was in some fear of the brothers, apparently fear of reprisal for making the statement to begin with. Defendant's Exhibit #1 at trial was a note written by appellant to Wages which read: "I guess what you done to get out has also got you back up here, you know as good as I do you have never heard me or Ben say we have ever done anything against the Law. So if you don't mind drop me a line and let me know what is going on, we go to court monday." The same exhibit contained Wages' response in which he assured Collins that he was not going to testify against him and that he made the statement just to get out of jail. Wages went on to offer Collins further apology and "some money" if he needed it. Whether or not Wages' original statement to the detective was true, whether it was motivated solely by his desire to get out of jail, whether the repudiation of the statement was out of fear of reprisal by the appellant and his brother or whether it was a genuine repudiation would all be questions properly determined by the jury. The credibility of a witness is a matter to be determined by the jury (OCGA § 24-9-80), as is the weight of the evidence. *Harris v. State*, 155 Ga. App. 530 (1) (271 SE2d 668) (1980).

The trial court did not err in denying appellant's motion for a directed verdict of acquittal. "The statutory standard for application by a trial court to decide a motion for a directed verdict of acquittal is '[w]here there is no conflict in the evidence and the evidence with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal . . . the court may direct the verdict of acquittal. . . .' OCGA § 17-9-1 (a)." *Maddox v. State*, 170 Ga. App. 498, 499 (1) (317 SE2d 617) (1984). Such was not the case here. Even if we characterize the evidentiary posture of the state's case as purely circumstantial, "a jury issue was formed and we will not substitute our judgment for that of the jury. 'The rule as to the sufficiency of circumstantial evidence to support a conviction is that the evidence exclude every reasonable hypothesis except the guilt of the accused, not that it removes every possibility of his innocence.' [Cit.] On appeal we must view the evidence in a light favorable to the verdict, and we find that the evidence is sufficient to enable any rational trier of facts to find the existence of the offense charged beyond a reasonable doubt." *Benson v. State*, 172 Ga. App. 135, 137 (322 SE2d 339) (1984); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Thus, it was not error for the trial court to refuse to grant Collins' motion for a directed verdict of acquittal.

We do not have the discretion to grant a new trial on the general grounds; we can only review the evidence to determine if there is any evidence to support the verdict. *Drake v. State*, 241 Ga. 583, 585 (247

SE2d 57) (1978), cert. denied, 440 U. S. 928 (99 SC 1265, 59 LE2d 485) (1979); it suffices here.

2. Collins further maintains that the trial court erred in failing to give his request to charge #1 which reads in pertinent part: "if you find the crime of burglary has been committed in the way and manner charged in the indictment, and certain personal property was stolen as a result of the burglary, and if recently thereafter, the Defendant was found in possession of such stolen property or any part thereof, you will be permitted, but not required, to infer that the Defendant committed the burglary. If you find from the evidence that there is another explanation of the Defendant's possession consistent with his innocence, you may not draw an inference that he committed the burglary. There being no other evidence that the Defendant was the perpetrator of the crime, before you can convict, you must believe the existence of the inferred fact beyond a reasonable doubt. *Williamson vs. State*, 248 Ga. 47, 281 S.E. 2d 512."

The record reflects that following the jury's retiring to deliberate, the court asked the attorney for the co-defendant (appellant's brother) whether he had any exceptions or objections to the court's charge. Co-defendant's counsel renewed his motion for a directed verdict of acquittal and also made one objection to the charge. The court never specifically inquired of appellant's counsel whether he too had any objections to the charge, nor did appellant's counsel on his own voice any objection or reserve objection until the time of making a motion for new trial. Because counsel for the appellant was never asked if he had any objection to the charge as given, we cannot hold that appellant's right to relief under OCGA § 5-5-24 was waived. *Brady v. State*, 169 Ga. App. 316, 318 (312 SE2d 632) (1983). The trial court in making the inquiry, of course, may help avoid retrials because corrections can be made in jury instructions while the damage can be easily repaired. Following the adage a stitch in time saves nine prevents having to reverse a case and require a new trial just as it prevents having to discard a whole garment.

Failing to give the subject charge here does not require retrial. Though the request on "recent, unexplained possession" in burglary cases has been expressly approved by our Supreme Court, this is so in burglary cases where the presumption or permissible inference is the *sole evidence* that the defendant was the perpetrator of the crime. See *Williamson v. State*, 248 Ga. 47, 57, n. 9 (281 SE2d 512) (1981). As discussed in Division 1, recent unexplained possession was not the only basis of the state's case-in-chief.

Moreover, the trial court's instruction in this case in part provided: "If it be proven that a burglary has been committed as described in the indictment or if it be proven that soon thereafter property shown to have been in the house at the time of the burglary is

found in the possession of a person who is unable to give a satisfactory explanation of his possession, such circumstances would authorize an inference that the person in possession committed the burglary and such circumstance, if proven, would authorize a conviction. Whether or not such circumstance has been proved and whether or not such an inference is to be drawn is for you, the jury, to determine, taking into consideration all the circumstances of the case. . . ." This was adequate in light of the evidence. The court's charge in its entirety indicated that the jury was permitted, but not required to find on proof by the state that a burglary had been committed and that defendant had possession of the stolen goods recently after commission of the crime, that defendant had committed the crime, that even if the jury found defendant to be in recent unexplained possession of the stolen items, it was not required to convict under the doctrine of recent unexplained possession. In addition, the court fully charged on the presumption of innocence and the state's burden of proving every element of the crime beyond a reasonable doubt. Id. at 57.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 30, 1985.

*George W. Woodall*, for appellant.
*Hobart M. Hind, District Attorney, Britt R. Priddy, Assistant District Attorney*, for appellee.