**UNITED STATES of America, Appellee,**

v.

**Ernest ALLEN, aka 1–95–m–1426–01, Defendant–Appellant.**

**No. 937, Docket 96–1305.**

United States Court of Appeals, Second Circuit.

Argued Feb. 13, 1997.

Decided Oct. 8, 1997.

Jeremy Gutman, New York City, for Defendant–Appellant.

Jo Anne Weissbart, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Peter A. Norling, Assistant United States Attorney, Brooklyn, NY, on the brief), for Appellee.

Before: JACOBS, CALABRESI and LAY [*], Circuit Judges.

JACOBS, Circuit Judge:

Ernest Allen appeals from a judgment of the United States District Court for the Eastern District of New York convicting him, following a jury trial, of making two extortionate extensions of credit in violation of 18 U.S.C. § 892(a). On appeal, Allen claims that 18 U.S.C. § 892(a) is unconstitutionally vague as applied to the facts of his case, and that the jury instructions improperly favored the prosecution and failed to articulate the central theory of the defense. We conclude that Allen's vagueness argument is better framed as a challenge to the sufficiency of the evidence; that manifest injustice would result if we were to address Allen's jury instruction argument without reaching the sufficiency issue; and that the evidence was insufficient to prove one of the elements of the offense beyond a reasonable doubt. Accordingly, we reverse.

## BACKGROUND

Allen, a janitor at the Veterans Administration Hospital in Brooklyn, was also a small-time loan shark. In early February 1995, the Office of the Inspector General of the Department of Veterans Affairs conducted an undercover operation at the hospital, in which agent Alexis Fernandez posed as a work-study student assigned to the hospital's engineering section. Agent Fernandez learned of Allen's loan-sharking sideline from other hospital employees.

On February 10, 1995, Fernandez approached Allen at the hospital and asked to borrow $100. Allen agreed to lend the money for a week, at a 25% per week interest rate, on the condition that Fernandez secure the loan with his gold chain. Fernandez had purchased this gold chain for approximately $300 six years earlier. Allen took down Fernandez's home address, gave Fernandez his pager number, and told Fernandez that (now that he had the pager number) Fernandez could not claim that he could not find the lender: "[P]eople who borrow from me know they don't have an excuse why they can't pay me back on time because I'll go anywhere to any neighborhood at any time to get the money."

On February 16, 1995, Fernandez approached Allen at the hospital, repaid the $100, remitted the $25 interest, and took back his gold chain. As agent Fernandez secretly tape recorded this conversation, the two then engaged in an amiable conversation, punctuated by joking and laughter, during which Fernandez began questioning Allen about his business. Fernandez asked Allen why he took collateral from borrowers. Allen explained that he took security so that he did not have to depend on the borrowers for

[*] Honorable Donald P. Lay of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

repayment. ·He added that he sometimes took losses but that "you can't get excited when you lose" because "[i]t's just a loss." Laughing out loud, Fernandez suggested that if a borrower defaulted, "you just smack that nigger, and you tell him give me my money." Allen allowed that he did that "many times," and that he "caught a guy one time over here [and] [k]nocked him out right here in the, um, bus stop."

The next loan transaction took place over two months after this exchange. On April 27, 1995, Fernandez asked Allen to borrow $150, but Allen was prepared to lend only $100, and the transaction was done on the same terms as the first loan. Again, Fernandez turned over his gold chain as collateral. On May 2, 1995, the two men met on a street corner near Allen's home. Fernandez repaid the $100, plus $25 interest, and Allen returned the gold chain. Allen then invited Fernandez to his home, where they went and talked.

On June 23, 1995, Fernandez borrowed $150 from Allen on the same terms as the other two loans. Once again, Fernandez relinquished his gold chain as collateral. On June 27, 1995, Fernandez repaid the loan, plus $37.50 interest, and soon thereafter Allen returned the gold chain.

The original indictment charged Allen with four counts: three counts of extortionate *extension* of credit in violation of 18 U.S.C. § 892 (one count for each loan to Fernandez); and one count (in respect of all three loans) of *collection* on extensions of credit by extortionate means in violation of 18 U.S.C. § 894. At the conclusion of the prosecution's case-in-chief, as well as at the conclusion of all the evidence, Allen moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(a), arguing that based upon the evidence, the jury could not find guilt beyond a reasonable doubt. Those motions were denied.

Allen was convicted (on counts two and three) of making two extortionate extensions of credit in relation to the second and third loans to Fernandez, but was acquitted on count one (alleging the extortionate extension of credit in respect of the first loan), and on the fourth count: collection of the three loans by extortionate means.

Allen then filed a Rule 29(c) motion for judgment of acquittal, claiming that 18 U.S.C. § 892(a) was unconstitutionally vague, as applied to the facts of his case. The district court denied this motion.

Allen was principally sentenced to 27 months' imprisonment; he is free on bail pending the outcome of this appeal.

## DISCUSSION

### A.

On appeal, Allen advances a subtle constitutional argument that the extortionate extension of credit statute, as applied to his case, is unconstitutionally vague. In addition, Allen asserts that the jury instructions improperly favored the prosecution and failed to articulate the defense's theory. Allen does not challenge the sufficiency of the evidence on appeal. However, although we believe that the vagueness challenge may have some merit, we think that this argument is better conceived and addressed as a sufficiency challenge.

■ To be constitutional, a statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and "provide explicit standards for those who apply [it]." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972). A "scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of. notice ... that [the] conduct is proscribed." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). In *United States v. Curcio,* 712 F.2d 1532 (2d Cir.1983), we found that, although § 892(a) is somewhat vague on its face, the statute contains a scienter requirement which can be satisfied by showing that the creditor and the debtor both understand at the outset of the loan transaction that violence could result if the loan is not repaid. *Id.* at 1544.

Allen points out that the word "understand" is very broad and may not in every case be sufficient to mitigate the law's vagueness. Specifically, Allen argues that if his

actions are sufficient to prove understanding under § 892(a), the statute encompasses conduct that the person of ordinary intelligence would not know is prohibited.

■ Although this argument may have some merit, the argument is better conceived as a challenge to the sufficiency of the evidence. The sufficiency of the evidence to satisfy the scienter requirement in a particular case is a threshold issue that obviates a vagueness challenge. Moreover, it is preferable to address the sufficiency issue if it has merit, because—unlike the vagueness issue—the sufficiency issue ordinarily raises no constitutional question.

Accordingly, before considering the evidentiary sufficiency in this case, we must consider whether Allen preserved the sufficiency issue at trial and raised it on appeal, and—if not—whether we may reach it and by what standard we must review it.

The Government concedes that the defendant "technically preserved" the sufficiency issue at trial via his Rule 29 motion at the conclusion of the Government's case and at the conclusion of all the evidence. However, without citing authority, the Government asserts that the issue was "abandoned" or "disavowed" by Allen's failure to raise it in the Rule 29(c) post-trial motion, and is therefore subject to review only for "plain error."

[3] To preserve the sufficiency issue and avoid the burden of showing plain error, a defendant must have moved for judgment of acquittal either at the close of all the evidence pursuant to Rule 29(a) *or* post-trial in a motion pursuant to Rule 29(c). *See United States v. Pless*, 982 F.2d 1118, 1122 (7th Cir.1992); *cf. United States v. Leslie*, 103 F.3d 1093, 1100–01 (2d Cir.) (holding that defendant did not waive sufficiency challenge by raising argument in Rule 33 motion for new trial and not in Rule 29 motion for judgment of acquittal), *cert. denied*, —— U.S. ——, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997). We find no case that requires the defendant to make both motions in order to preserve the issue or that treats as a forfeiture a failure to raise the sufficiency claim on the Rule 29(c) motion. Allen's motion at the close of evidence therefore preserved the sufficiency issue for appeal.

■ But Allen did not argue the sufficiency challenge on appeal. "Ordinarily ... an argument not raised on appeal is deemed abandoned. However, Fed. R.App. P. 2 gives a Court of Appeals the discretion to overlook such a failure if manifest injustice otherwise would result." *United States v. Babwah*, 972 F.2d 30, 34–35 (2d Cir.1992) (citations omitted).

Manifest injustice would result here if we failed to consider the sufficiency of the evidence. First, as noted, Allen's void-for-vagueness argument is closely related to the sufficiency challenge. In fact, the Government's rejoinder to Allen's vagueness argument is that the evidence was sufficient to find the requisite understanding by Allen. Thus, the issue was raised in the briefs and the Government would not be prejudiced by our consideration of it. *See, e.g., Babwah*, 972 F.2d at 35.

Second, even if we did not reach the sufficiency issue, we would have to vacate the verdict and remand for a new trial because the jury instructions were flawed for the reasons stated in section B of this opinion. For us to do that in this case without addressing the looming issue of whether the evidence was sufficient to support the conviction could result in the futility of a second conviction that would have to be reversed in a second appeal. That would be an imposition on the district court and the parties. Moreover, it strikes us as unjust to subject the defendant to a second trial if the evidence at the first trial was insufficient to convict. Under these circumstances, it would be a manifest injustice for us to fail to consider and decide the sufficiency issue.

**B.**

■■ "Although the trial court is not required to review or marshal the evidence for the jury and has broad discretion to decide which facts, if any, it will mention in its comments to the jury, the discretion of the court is circumscribed by the requirement that the charge be fair to both sides." *United States v. GAF Corp.*, 928 F.2d 1253, 1263

(2d Cir.1991); *see also United States v. Dove,* 916 F.2d 41, 45 (2d Cir.1990). Further, " '[a] criminal defendant is entitled to a jury charge that reflects any defense theory for which there is a foundation in the evidence.' " *United States v. Abcasis,* 45 F.3d 39, 42 (2d Cir.1995) (citation omitted) (alteration in original); *see also Dove,* 916 F.2d at 47. "A conviction will not be overturned for refusal to give a requested charge, however, unless that instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge." *United States v. Vasquez,* 82 F.3d 574, 577 (2d Cir.1996).

■ We think that the charge in this case was unbalanced and failed to present a defense theory with strong support in the evidence. The judge instructed the jury that "[t]he second element which the government must prove beyond a reasonable doubt is that there was an understanding between the parties, whether it was expressed or implied, that if the loan wasn't repaid violence or some other criminal means would be used to force repayment." He went on to discuss crucial evidence favoring the prosecution: "In connection with the second element you may recall that evidence was received of a prior attempt to collect an extension of credit by extortionate means. You may recall there was evidence of somebody being knocked out, I think the expression was, at a bus stop." The judge reminded the jury that that evidence was received solely for the purpose of determining the borrower's state of mind at the time of the loans at issue. Then the judge returned to this incident and outlined several other pieces of evidence, all favoring the prosecution's case, which the jury could consider in determining whether the loan was extortionate:

> [Y]ou may consider such things, for example, as whether the loan would be enforceable in a court of law. And the parties have stipulated that the loan would not be enforceable in a court of law.

> You may consider whether the interest which was required to be paid on that loan was more than 45 percent a year. You may want to consider that when the loan was made the borrower reasonably believed that a past loan had been attempted to be collected by extortionate means.

The court then gave the sole instruction concerning the theory of the defense: "Now, Mr. Allen's contention is that the government failed to prove the second element of the offense beyond a reasonable doubt."

The defense had proposed that the court instruct the jury as follows:

> Mr. Allen contends that the government has failed to prove beyond a reasonable doubt that he took any action that was intended to suggest a threat of any kind, direct or indirect, implicit or explicit, that he would cause harm to Agent Fernandez if he did not repay the loans in a timely manner, and he contends that the government has failed to prove beyond a reasonable doubt that there was an understanding between Mr. Allen and Agent Fernandez that there was such a threat against the agent. Rather, Mr. Allen contends that the evidence shows that his understanding with the agent was that, if the loan were not repaid, the only consequence would be that Mr. Allen would keep the gold chain that had been given to him as collateral.

The jury instructions failed to reference Allen's claim that there was no proof that he understood violence would result if Fernandez failed to repay the loans or to the fact that Allen had taken collateral worth a multiple of each loan. Because the instructions continually referenced the one tale of prior violence and because this story was really the sole piece of evidence relating to Allen's state of mind, the failure to give at least the part of the proposed defense instruction relating to the collateral, or some instruction summarizing the defense's theory, resulted in an imbalanced and unfair charge that prejudiced the defendant.

### C.

■ "A defendant challenging the sufficiency of the evidence must demonstrate that 'viewing the evidence in the light most favorable to the government, . . . no rational trier of fact could have found the essential elements of the crime charged beyond a reason-

able doubt.'" *United States v. Taylor*, 92 F.3d 1313, 1333 (2d Cir.1996) (quoting *United States v. Brewer*, 36 F.3d 266, 268 (2d Cir.1994)) (alteration in original), *cert. denied*, —— U.S. ——, 117 S.Ct. 771, 136 L.Ed.2d 717 (1997).

■ Section 892(a) prohibits "any extortionate extension of credit" which is defined in § 891(6) as "any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person." 18 U.S.C. § 891(6) (1994). Crucial to conviction under this statute is proof that both the creditor and the debtor understood when the loan was made that force could be used to collect the loan at issue. *See United States v. Curcio*, 712 F.2d 1532, 1544 (2d Cir.1983) ("The Government thus must establish that the defendant understood that his conduct could have the stated consequences."); *see also United States v. Zannino*, 895 F.2d 1, 11 (1st Cir.) ("[A]ppellant is correct that the understanding of both creditor and debtor is crucial to proving a substantive violation of 18 U.S.C. § 892(a) ...."), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990); *United States v. Spillone*, 879 F.2d 514, 526 (9th Cir.1989) ("It is the mutual understanding of the parties to the transaction that failure to repay could lead to violence ... that the statute requires."), *cert. denied*, 498 U.S. 878, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990).

■ The only evidence at trial concerning violence was a passage in the tape-recorded conversation of February 16, 1995, which took place after repayment of the first loan (as to which Allen was acquitted) and before the two later loan transactions (as to which Allen was convicted). The evidence was insufficient to prove an element of the crime charged unless the content and context of that conversation, coupled with other evidence presented at trial, could permit a reasonable factfinder to infer beyond a reasonable doubt that Allen understood at the time he extended the subsequent loans that violence could result from the failure to repay.

Extensive quotation from the transcript is necessary. The conversation began when agent Fernandez approached Allen to repay the first loan before it was actually due. After paying the $125 he owed, Fernandez drew out Allen concerning the operation of his business. (We emphasize that at the time of this conversation, no loan was outstanding and no additional loan would be extended to Fernandez for two months.)

A. Fernandez: Do you, do you always get collateral from your customers? 'Cause I felt kinda funny, you know what I mean.

E. Allen: You know, you know let me tell you somethin' about ... Money, money turns people around.

AF: Right.

EA: You know, OK, say uh, I don't know your situation.

AF: Right right right.

EA: You could tell me anything.

AF: Yeah, right.

EA: OK. Now say, I did give you that money without collateral. Now, you're gonna tell me somethin, but, in some way, you're dealing with somebody else.

AF: Right.

EA: So, you gotta get that money from somebody else. But this guy going to disappoint you.

AF: Right right right right right.

EA: You see what I'm talkin' about?

AF: Yeah, I hear you.

EA: Now you're (UI) going to disappoint the man.

AF: Right right.

EA: You see what I'm talkin' about?

AF: Yeah, like you're the middle man, you gettin' fucked up. Yeah.

EA: Right right right right right. But you know you got people that do that.

AF: Right right.

EA: You know ... They really really depend on other people.

AF: Right.

EA: I don't depend on nobody, man. I don't even depend on the mailman.

AF: Right.

This passage was a rough and ready explanation of the need for collateral in loan transactions. Allen was taking collateral to ensure that he did not become the loser if the borrower could not pay because of a default by someone else on a debt to the borrower. Allen emphasized at the end of this passage that he works alone, a point that illuminates a later passage in the transcript.

Agent Fernandez then assured Allen that he returned the $125 on time—did "the right thing"—because "you never know when you need a ... [f]riend with a dollar in your pocket." Fernandez then turned the conversation to the subject of people who fail to repay their loans:

AF: But damn a lotta people must have disappointed you over the years -

EA: Let me tell you somethin' man. If I show you somethin' (UI), it would blow your head. Sure! I lose. But you don't lose more than you gain.

AF: Right right.

EA: Or you might as well get the fuck out of the business.

AF: Right right right right.

EA: I always win. 'Cause like I make video and stuff like that. You always got that money comin' in different places.

AF: Yeah, I hear that shit. You're a money man. You know, you only know about makin' money, that's cool.

EA: And and and not only that, see, you can't get excited when you lose.

AF: Right.

EA: It's just a loss.

AF: It's a loss, it's a business expense.

EA: Exactly.

AF: But then again, sometimes, you know, like I know, if I was in this business, like I'd do my best not to incur a loss, you see what I mean? (Laughs)

EA: No, no, no. That's it! That's the key!

AF: Yeah, yeah.

EA: That's the key. You gotta win more than you lose.

AF: Right.

EA: You gotta top off everything. See most times, when people get me, if I lose, people gonna give me what that I lost.

AF: Right right.

EA: But then you know, the other fuck-ups, see.

AF: Right.

EA: Other people are dealing with the fuck-ups that fucked me.

AF: Right right right right.

EA: So I got to be a winner.

AF: I hear you.

EA: I feel accomplished. Money comin' in, check comin' in.

This passage continues Allen's statement of his lending principles: a default is a loss that must be chalked up as the cost of doing business; but if one "top[s] off everything," the borrower's collateral and interest paid by other borrowers will "give me what I lost." To this point, there is no reference to violence. The "other people" who deal with defaulters may be other loan sharks, or others, but cannot be Allen's enforcers, because (as the transcript earlier reflects) Allen works alone. A bank manual for lending officers would convey many of the same principles: loans should be made against collateral; one purpose of collateral is to avoid becoming the loser in a chain of defaults; prudent decisions on the sufficiency of interest and collateral across-the-board will assure that even if some borrowers default, and the bank must book a loss, an adequate return on loaned funds can be achieved nevertheless.

As agent Fernandez turned the subject to the use of violence to collect loans, the conversation was characterized by laughter and amiable chatter:

AF: If not you just smack that nigger, and you tell him give me my money. (Laughs)

EA: I did that many times.

AF: Yeah?

EA: I caught a guy one time over here. Knocked him out right here in the, um, bus stop.

AF: For real?

EA: Knocked him out.

AF: Oh, shit.

EA: Swear to God, you ask some of these guys. Ask Roberto.

AF: Yeah?

EA: Ask him.

AF: Knocked out a guy right there in the bus stop?

EA: I had to knock that motherfucker out in the bus stop 'cause I didn't want to do it in here.

The Government relies on this mention of violence as an essential peg for the conviction. We think it is insufficient for a number of reasons.

Fernandez initiated the topic of violence, jocularly, in a way that called for and elicited from Allen a boastful assent and a war story. Allen had just explained that he obtained collateral for loans to avoid reliance on mere good faith ("money turns people around"), and that "you can't get excited when you lose." This whole conversation followed Allen's peaceful collection of Fernandez's well-collateralized first loan transaction. No loan transaction was pending or contemplated. No further transaction took place until about two months later. Those subsequent loans conformed to Allen's practice (at least with Fernandez) of securing loans through collateral. We think that no rational juror who is properly instructed as to Allen's defense—reliance on collateral rather than violence—could find that this exchange reflected Allen's understanding months later that the subsequent, collateralized loans would be extended under the threat of violence.

■ The Government argues that "the presence here of *prima facie* evidence of an extortionate extension of credit as defined in 18 U.S.C. § 892(b) precludes a determination that the evidence of such an extension of credit was insufficient as a matter of law." This mischaracterizes the effect of the prima facie case prescribed by the statute.

Section 892(b) provides that "there is prima facie evidence that the extension of credit was extortionate" if four factors are met: (1) the repayment of the loan was unenforceable through civil judicial processes against the debtor; (2) the extension of credit was made at an annual rate of interest in excess of 45 percent; (3) "[a]t the time the extension of credit was made, the debtor reasonably believed that either (A) one or more extensions of credit by the creditor had been collected or attempted to be collected by extortionate means, or the nonpayment thereof had been punished by extortionate means; or (B) the creditor had a reputation for the use of extortionate means to collect extensions of credit or to punish the nonrepayment thereof"; and (4) the total amount of outstanding loans to the debtor at the time the loan at issue was made exceeded $100. 18 U.S.C. § 892(b) (1994). We have previously stated that § 892(b) "creates a 'permissive inference or presumption' namely, one 'which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant.'" *United States v. Curcio*, 712 F.2d 1532, 1540 (2d Cir.1983) (quoting *County Court of Ulster County v. Allen*, 442 U.S. 140, 157, 99 S.Ct. 2213, 2224–25, 60 L.Ed.2d 777 (1979)); *see also United States v. Zannino*, 895 F.2d 1, 11 (1st Cir.) ("In effect, the statute creates a rebuttable presumption, triggered by proof of the statutory factors."), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

Section 892(b) states specifically that "this subsection is nonexclusive and in no way limits the effect or applicability of subsection (a)." 18 U.S.C. § 892(b) (1994). Subsection (a) contains the term "extortionate extension of credit", which is defined in § 891(6) as including an understanding by *both* the creditor and the debtor that violence could result if the loan is not repaid. Therefore, § 892(b) does not eliminate or alter the requirement that the requisite understanding of the creditor be proved beyond a reasonable doubt; rather, the statute permits the prosecution to prove a prima facie case without any direct proof of the creditor's state of mind based on the assumption that it is rational to infer that

element from the four factors in most cases, as indeed it is.

Although some commentators have noted that proof of a prima facie case may preclude a directed verdict for the defendant, *see, e.g.,* Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 1.8 (1986) ("The generally accepted rule is that once the prosecution has proved the underlying fact (or facts) to which the presumption attaches, the case must go to the jury (*i.e.,* there will be no directed verdict for the defendant)."), such a result in this case would override the presumption of innocence and permit conviction when an element of the crime has not been proven beyond a reasonable doubt.

In *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), the defendant was charged with possession of an unregistered still and with carrying on the business of a distiller without having given a bond. *Id.* at 63–64, 85 S.Ct. at 755–56. Both statutory provisions provided that if the defendant was shown to be at the site or place of an unregistered still, or where the business of a distiller was being carried on, "such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury." *Id.* at 64 n. 2, 85 S.Ct. at 756 n. 2. The jury was instructed on the permissibility of drawing this inference. The Court stated that "the constitutionality of the legislation depends upon the rationality of the connection 'between the facts proved and the ultimate facts presumed.'" *Id.* at 66–67, 85 S.Ct. at 757 (quoting *Tot v. United States,* 319 U.S. 463, 466, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519 (1943)). The Court held that the connection between a person's presence and carrying on the business of an unbonded distiller was rational because such distillers usually are very effective at hiding their operations, and an individual will usually be present at such a site only if he has some involvement in the business. *Id.* at 67–68, 85 S.Ct. at 757–58.

The Court then addressed defendant's argument that the presumption was unconstitutional because "it impinge[d] upon the trial judge's powers over the judicial proceeding." *Id.* at 68, 85 S.Ct. at 758. The Court stated:

Our Constitution places in the hands of the trial judge the responsibility for safeguarding the integrity of the jury trial, including the right to have a case withheld from the jury when the evidence is insufficient as a matter of law to support a conviction. The statute before us deprives the trial judge of none of his normal judicial powers. We do not interpret the provision in the statute that unexplained 'presence . . . shall be deemed sufficient evidence to authorize conviction' as in any way invading the province of the judge's discretion. The language permits the judge to submit a case to the jury on the basis of the accused's presence alone, and to this extent it constitutes congressional recognition that the fact of presence does have probative worth in the determination of guilt. But where the only evidence is of presence the statute does not require the judge to submit the case to the jury, nor does it preclude the grant of a judgment notwithstanding the verdict. And the Court of Appeals may still review the trial judge's denial of motions for a directed verdict or for a judgment *n.o.v.*.

*Id.* at 68, 85 S.Ct. at 758 (alteration in original). The Court interpreted this seeming "prima facie case" provision or presumption as allowing a finding of guilt but not precluding the judge from granting a judgment notwithstanding the verdict if the evidence was insufficient to prove the elements of the crime.

*County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), did not alter a court's authority to direct a verdict notwithstanding a statutory presumption. In that case, the jury had been instructed that it could presume that a firearm in an automobile is evidence of its illegal possession by all occupants of the car. *Id.* at 145, 99 S.Ct. at 2218–19. Essentially, the Court found that a rebuttable presumption is merely like any other piece of evidence presented to a jury and that it was admissible as long as there was a rational connection between the proven fact or facts and the presumed fact, given the circumstances or facts of that case:

Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

*Id.* at 157, 99 S.Ct. at 2225. However, the Court did not alter *Gainey*'s rule that statutory presumptions are best interpreted as not withdrawing the trial judge's authority to find the evidence insufficient and grant a judgment as a matter of law. In fact, the Court recognized that when the presumption is the only evidence supporting an element, the proven fact or facts must be sufficient to prove the presumed fact beyond a reasonable doubt. *See id.* at 167, 99 S.Ct. at 2230 ("As long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need only satisfy the [rational connection] test. . . .").

We expressed no different view in *Curcio*, where the sole question presented was whether the court could evaluate a challenge to § 892(b) when the defendant had pleaded guilty and there was no factual record on which to analyze the presumption. We held that the trial court had abused its discretion in accepting a plea agreement that permitted the defendant to challenge the constitutionality of § 892(b) on appeal, *Curcio*, 712 F.2d at 1540–41, because under *County Court*, the constitutionality of a permissive presumption must be considered in light of the facts of the particular case, which facts could be developed only at trial, *id.*

■ Were we required to interpret § 892(b) in this case as precluding reversal of the conviction for insufficiency of the evidence, serious questions would be raised as to its constitutionality. Therefore, following *Gainey*, we interpret § 892(b) as permitting a court to submit the case to the jury when the prosecution has proven the prima facie case, but not requiring that a court do so

when the prima facie case is the only evidence of the creditor's understanding and the prima facie case is insufficient to prove this element beyond a reasonable doubt.

Here, the prosecution met its prima facie case by relying on Allen's boast of violence to furnish the third factor—*i.e.*, that at the time of the loan, *Fernandez* reasonably believed that Allen had used violence to collect a previous loan. As demonstrated, this evidence was insufficient to prove *Allen*'s understanding with regard to the second and third loans. Because Allen had sufficient collateral, none of the other three factors— the unenforceability of the loan, the high interest rate, and the amount of the loan— suffice to prove that Allen understood that violence could result from Fernandez's default. The factors underlying the prima facie case were the only evidence relating to Allen's understanding. We think that no rational factfinder could find on this evidence, beyond a reasonable doubt, that Allen had the requisite understanding. Accordingly, the evidence was insufficient to satisfy all of § 892(a)'s elements and the conviction must be reversed.

### CONCLUSION

The judgment of the district court convicting defendant of two counts of extortionate extensions of credit pursuant to 18 U.S.C. § 892(a) is reversed.